## Wright vs. J. & S. Wilcox.

An action on the case does not lie against a master and servant jointly for a wilful injury done by the servant whilst driving the carriage of the master, if such carriage be not employed in the conveyance of passengers, and the master be not present when the injury occurs.

If the injury be occasioned by the negligence or want of skill of the servant, a joint action lies against the master and servant; the doctrine of judge Reeve in his treatise on domestic relations extending the rule to wilful injuries, adverted to, commented upon and denied.

The statute 2 R. S. 456, § 16, 2d ed. authorizing case where trespass may be brought for injuries to the person, &c. does not change the rights of parties; it affects only the remedy.

This was an action on the case, tried at the Cayuga circuit in October, 1836, before the Hon. Daniel Moseley, one of the circuit judges.

The suit was brought for an injury sustained by the son of the plaintiff, who was a minor, in being run over by a wagon driven by S. Wilcox, the son of J. Wilcox, whilst in the employment of the father. The plaintiff's son was a very young lad, and on his way to school asked S. Wilcox to permit him to ride; who answered that he might do so, when he got up a hill which he was then ascending. When the hill was ascended, the lad took hold of the side of the wagon between the front and hind wheels. S. Wilcox did not stop his team. He was cautioned by a by-stander that if he did not stop he

would kill the boy. He looked behind him ; the horses were then walking ; and seeing the plaintiff's son and other boys attempting to get on the wagon, he cracked his whip and put the horses upon a trot. The plaintiff's son fell and one of the hind wheels passed over him, and greatly injured him. A joint action was brought against the defendants. A motion was made for a nonsuit, which was denied. The judge charged the jury, that both defendants were answerable whether the injury was wilful, or only attributable to negligence. The jury found a verdict for the plaintiff against both defendants with $109, damages. A motion was made for a new trial.

*J. Williams, & S. Stevens*, for the defendants.

*M. T. Reynolds*, for the plaintiff.

*By the Court*, COWEN, J. In a case of strict negligence by a servant while employed in the service of his master, I see no reason why an action will not lie against both jointly. They are both guilty of the same negligence at the same time, and under the same circumstances ; the servant in fact, and the master constructively, by the servant his agent. Mr. Hammond lays down the rule in this way : " Whether the principal and inferior may be charged jointly, depends on whether the inferior is liable as a trespasser vi et armis, or in case only. If the latter, they may be sued together, but otherwise, if the former, it being held, how justly may be questioned, that a principal is liable for his agent's misconduct only in case." Ham. on Part. to Actions, 85, 6. The rule is, in the main, doubtless right, but seems to be shaken by *Moreton* v. *Hardern*, 6 Dowl. & Ryl. 275, in respect to the quality of the servant's act. There were, in that case, three proprietors of a coach, one was driving and ran against the plaintiff's cart. All three were sued in case ; and several judges thought either trespass or case would lie against the driver, though the mischief arose from mere negligence ; but all agreed that case only would lie against the other two who were absent ; yet the action was maintained against all three.

NEW-YORK,
May, 1838.

Wright
v.
Wilcox.

But it is impossible to sustain this verdict against the father. It is difficult to infer from the evidence, any thing short of a design in Stephen the servant, to throw the plaintiff's boy from the waggon ; and the judge, as I understand the charge, told the jury that the defendants were jointly liable in that view. If Stephen, in whipping the horses, acted with the wilful intention to throw the plaintiff's boy off, it was a plain trespass, and nothing but a trespass, for which the master of Stephen is no more liable than if his servant had committed any other assault and battery. All the cases agree that a master is not liable for the wilful mischief of his servant, though he be at the time, in other respects, engaged in the service of the former. 1 Chit. Pl. 69, ed. of 1828. *M'Manus* v. *Crickett*, 1 East, 106. Ham. on Part. to Actions, 83. *Croft* v. *Alison*, 4 Barn. & Ald. 590. 1 Chit. Gen. Pr. 80. *Browcher* v. *Noidstrom*, 1 Taunt. 568. Why is the master chargeable for the act of his servant ? Because, what a man does by another he does by himself. The act is within the scope of the agency. Reeve's Dom. Rel. 357. " A master is not answerable," says Mr. Hammond, " for every act of his servant's life, but only for those done in his *relative* capacity. To charge the master, it must always be shown or presumed, that the relation of master and servant subsisted between them in the *particular affair.* If the master is liable under other circumstances, he is so, not *quatenus* master, but as any one would be who instigates an injury." The dividing line is the wilfulness of the act. If the servant make a careless mistake of commission or omission, the law holds it to be the *master's business negligently done.* It is of the very nature of business that it may be well or ill done. We frequently speak of a cautious or careless driver in another's employment. Either may be in the pursuit of his master's business, and negligence in servants is so common, that the law will hold the master to the consequences as a thing that he is bound to foresee, and provide against. But it is different with a wilful act of mischief. To subject the master in such a case, it must be proved that he actually assented,

NEW-YORK,
May, 1838.

Wright
v.
Wilcox.

for the law will not imply assent. In the *particular affair*, there is, then, no longer the presumed relation of master and servant. The distinction seems to resolve itself into a question of evidence. A man shall be presumed to intend the ordinary consequences of his own acts; and especially so far as such consequences may be *innocent of all evil intention*; for these he may be safely held accountable. But for those which are remote or barely possible, he is not accountable; and if they be at the same time criminal, it would be violating one of the plainest principles of presumptive evidence to say that he intended them. "The master's liability has never been questioned," says judge Reeve, "when a servant does an act injurious to another, through *negligence* or *want of skill*, on the principle that the master should at his peril employ servants who are skilful or careful." Reeve's Dom. Rel. 357, 8. He admits that the English cases deny the master's liability where the servant's act is wilful; but questions the soundness of the distinction, if the wilful act be done *in the immediate performance of his master's business;* in which I understand the learned judge at the circuit to have followed him in the case at bar. The answer is that the law holds such wilful act *a departure from the master's business.* Judge Reeve remarks that one of two innocent persons must suffer, and that should be the man who put it in the power of the servant to do the injury; and the reason is as strong that the master should run the risk of his servant's unruly passions, as his want of care. Clearly the argument proves too much. It would make the master accountable for every mischievous act of the servant, which he is enabled to commit in consequence of the general relation; for aught I see, including the credit which the servant may obtain with his merchant. The learned writer puts a distinction involving the very question we are considering. A servant driving a waggon, leaves it and commits an assault and battery; for that he admits the master is not liable; otherwise, if he should drive it violently over a man with intent to injure him. "In the first place, (he says,) the servant had abandoned his master's business; in the latter, he was in *the*

*immediate pursuit of it;* in the first, he was not driving his master's waggon, in the last he was." Now the authorities deny that when the servant *wilfully* drives over the man, he is in his master's business. They hold it a departure, and a going into the servant's own independent business. It is true, he is still driving his master's waggon, and so he would be though he should use it to run away from service. It will hardly be contended, that after he has completed his escape, the master would be liable for his running over a man ; and why ? Because he has taken up a new and distinct object of his own, and is engaged in executing that ; and has he not, to every material purpose, done the same whenever he commits a wilful injury to another ? In *M'-Manus* v. *Crickett,* the servant, while driving a chariot on the road as authorized by his master, *wilfully* drove against the plaintiff's chaise. Lord Kenyon said that the act being wilful, the chariot might be considered for that purpose in the possession of the servant as his special property, and not the master's. He said : "When a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him." He puts the master's liability on the ground of negligence or unskilfulness with no purpose but the execution of his orders. Judge Reeve says it is difficult to reconcile such a doctrine with the cases which hold a sheriff liable for the wilful misfeasance of his deputy. But such cases are clearly, as stated by Mr. Hammond, exceptions to the general rule for reasons of policy. Hamm. on Part. to Actions. 83, 4, The master is liable in *case* only ; but the action against the sheriff is *trespass,* and lies against him for every act of his officer done *colore officii,* even the execution of process after the return day, and the seizing of the goods of a third person. Id. *Ackworth* v. *Kempe,* 1 Doug. 40. *Parrot* v. *Mulford,* 2 Esp. N. P. Cas. 585. So for arresting under color of process without having any in his hands. *Smart* v. *Hutton,* 2 Nev. & Mann. 426.

The line where the master's liability shall terminate must be placed some where ; and the acquiescence of Westmins-

ter Hall for many years in the rule we have cited as laid down by Lord Kenyon, is an evidence 'of the common law not to be resisted, especially as it will not be found, I imagine, to conflict with any general principle of that law.

The statute 1 R. S. 693, § 6, has altered the rule in respect to carriages for the conveyance of passengers. The owners are here liable, whether the injury done to another by the driver be *wilful* or *negligent*. It is not contended, however, that this statute applies to the case at bar.

The objection to the judge's charge goes to the very foundation of the action against Joseph Wilcox, the father. It should have been put to the jury, that, if they were satisfied from the evidence of Stephen's design to throw the plaintiff's son from the waggon, they should have acquitted his father. It is true that by the 2 R. S. 456, § 16, 2d ed. this act of Stephen, though wilful, and formerly therefore the subject of an action of trespass only, is, by the statute, made the subject of an action on the case. The only consequence is that he might have been convicted and his father acquitted. But the statute, though it mitigates the consequence of misjoinder, never intended to alter the effect of the relation between master and servant. It neither adds to the right of the plaintiff nor the liability of the defendant. It goes only to the form of the remedy, by giving *case* in almost all instances of personal injuries redressible formerly by trespass only.

A new trial must be granted, the costs to abide the event.