Echols v. Dodd.

dren and the amount of their separate property show that it is not adequate to their support and education; and it is not even alleged in the petition to be sufficient.

*R. Q. Mills*, for appellee.

---

JOHN ECHOLS, ADM'R, v. ANDREW M. DODD.

A manager, superintendent or overseer, under whose control a hired slave is placed, has authority (in the absence of proof to the contrary) to chastise him for misconduct; and in doing so, acts strictly in the line of his duty to his principal.

It necessarily devolves on such manager, superintendent or overseer, by reason of his employment, to decide when chastisement is proper, and the amount proper to be inflicted.

If such chastisement be done so negligently, carelessly, unskilfully or recklessly, as to cause the death of the slave, clearly the rule of *respondeat superior* applies, and the principal is responsible to the owner of the slave, for his value.

Where a jury was waived and the facts agreed upon were simply, that such manager, superintendent or overseer, in the absence and without the knowledge of his principal, chastised the slave for alleged misconduct, and beat him so severely that he died therefrom, the Court below having found for the defendant, the principal, the judgment was reversed, and rendered for the plaintiff, the owner of the slave.

It is said that it must be deemed the wilful and malicious act of the overseer, because the chastisement of the slave occasioned his death; and every homicide is presumed to be malicious, until the contrary appear. If the overseer were upon his trial for the homicide, that principle might apply; but it has no

Echols v. Dodd.

application in the present case. This is a case of civil, and not of criminal responsibility.

Appeal from Burleson.   Tried below before the Hon. R. E. B. Baylor.

Suit by appellant against appellee for the value of a slave.

The case was submitted to the Judge upon the following statement:—

1st. The plaintiff was, on the 1st day of Jan. 1856, as administrator of Henry J. Munson, lawfully seized and possessed of the negro slave Bill, described in the petition, the property of the estate of said Munson; and on the day and year aforesaid, the plaintiff, on a contract of hiring for the term of one year, delivered said boy to the defendant.

2d. The defendant was the owner of a saw-mill about 30 miles from the residence of the defendant, and the negro boy was hired for the purpose of being employed in and about said mill.   One Williams was in the employment of the defendant, as manager and superintendent of the mill and hands, and during the absence of the defendant had exclusive authority and control.

3d. That while said negro was at work in and about the mill on the —— day of February, 1856, said Williams chastised said negro for alleged misconduct, and beat him so severely that he died therefrom.

4th. That at the time said Williams beat said negro as aforesaid, the defendant was absent and had no knowledge of it.

5th. That said negro was reasonably worth the sum of $800.

6th. That prior to the commencement of this suit, the plaintiff demanded a return of the negro from the defendant, and the same was refused.

7th. That Williams had, previously to being employed by the defendant, been overseer for several years in the neighborhood, had the reputation of being a good overseer.

Upon the foregoing case agreed, judgment was rendered for the defendant.

*Sayles*, for appellant.   The principal is liable, in a civil suit, for the wrongful acts of his agent, in the course of his employment, although the principal did not authorize or justify or participate in, or indeed know of such misconduct, or even if he

*forbade them or disapproved of them.* (Story on Agency, Sec. 452; Smith on Master and Servant, 152, 157; Philadelphia and Reading R. R. Co. v. Derby, 14 How. R. 468.)

Chastisement for misconduct the overseer had the right to inflict; but it was his duty to inflict it with moderation, so as not to endanger life or limb. On the contrary, it was inflicted so immoderately, so cruelly, with such gross negligence, as to result in death. The case stated in Story on Bailments, p. 100, is analogous to the present. "If a hired horse is ridden by the servant of the driver so immoderately that he is injured or killed thereby, the driver is personally responsible."

The rule is laid down by some authors, that the master is not responsible for the wilful acts of his servant. This rule lacks precision and clearness; for every act that is not involuntary, is wilful; and a careful examination of the cases making that distinction, will show that they depended on the question whether the servant, at the time he did the act complained of, was acting in the course of his employment; or, in other words, whether he was or was not, at the time, in the relation of servant to the defendant. (14 How. R. 486.)

The act of the overseer in this case was not wilful in the sense in which that term is used; that is it was not done to accomplish any illegal purpose of his own. He did not chastise the slave to gratify his own malice, or for the purpose and with the intent to cause his death; but he chastised, as he lawfully might do, for disobedience of his orders, given in his master's business. It is not the chastisement of the slave of which we complain, but of the manner in which it was inflicted. The act was lawful; its mode of performance was unlawful. This, I conclude, is one *correct test of the responsibility of the master or employer.* If the servant could justify the performance of the act under the authority of the master, then the master is responsible for the manner of the performance.

The distinction is clearly stated in Smith's Mercantile Law, p. 70: "But though the employer is answerable for the negligence of his agent while engaged in his service, yet he is not so for his wilful and malicious trespass; thus, if a servant driving a carriage, in order to effect some purpose of his own, wantonly strike the horses of another person and produce the accident, the master is not liable; though, if intending to effect his master's orders, he strike, but injudiciously to extricate himself from a difficulty, that will be negligent and careless conduct for which

the master will be liable, being an act done in pursuance of the servant's employment."

If the overseer had wantonly and maliciously killed the negro, to effect some purpose of his own, the master would not have been responsible; but there is no evidence of a malicious intent in the act of the overseer; it was not done to effect any purpose of his own, but was done in strict pursuance of his authority. (See also, Mills v. Ashe, 17 Tex. R. 295; Robinson v. Varnell, 16 Id. 382.)

*Lewis & Davis*, for appellee. I. The responsibility of the principal grows out of, is measured by, and begins and ends with his control of the agent. (1 Parsons on Cont. 87.) "On this ground rests the distinction, now well established, between the negligence of the servant and his wilful and malicious trespass—the act in either case being done in the course of his employ. For the former the master must answer; for the latter he is held not liable, unless the trespass is proven to have been authorized or ratified by him." (Ib. note (a a) and authorities cited.)

"In order to identify the principal with an agent who commits a trespass it is not sufficient to prove merely that the agent when he offended had the conduct of his master's lawful business; for although a principal is responsible for the negligence of his agent, he is not responsible for his wilful misconduct." (Angell on Carr. Sec. 604.)

Hence it is that the principal is never liable for the unauthorized, the wilful or the malicious act of the agent. (Story, Agency, Sec. 456; Kent, Com. 2 vol. 284; McManus v. Crickett, 1 East. 108; 17 Mass. 508–510; Wright v. Wilcox, 19 Wendell, 343; Croft v. Alison, 4 Barnw. and Ald. 590.)

The Court, in "Wright v. Wilcox" above cited, say: "The dividing line is the wilfulness of the act. If the servant makes a careless mistake of commission or omission, the law holds it to be the master's business negligently done. But it is different with a wilful act of mischief. To subject the master in such a case, it must be proved that he actually assented; for the law will not imply assent. In the particular affair there is then no longer the presumed relation of master and servant. The distinction seems to resolve itself into a question of evidence."

The authorities cited above clearly and conclusively establish the principle, that although the master is ordinarily responsible for the tortious acts and misfeasances of his servant, when com-

mitted in the course of his employment; yet he is not responsible for his wilful and malicious acts, unless done with the assent or by the authority of the master.

II. Was then the act of Williams, in killing the negro slave by severe chastisement, wilful and malicious? and was it without the authority and assent of the appellee?

It is a general rule of law, that all homicide is presumed to be malicious and amounting to murder, until the contrary appears, and proof of matter of excuse or extenuation lies on the defendant. (1 Rus. on Cr. 483; Wharton on Hom. 34.) It is shown that the negro was killed by Williams. There was no attempt to prove extenuation or justification. Hence the law presumes it to have been wilful and malicious.

It is not pretended that the appellee was present or assisted in any manner whatever in killing the slave or that he authorized or assented to it, nor will the law imply assent or authority. (Wright v. Wilcox, above cited.)

WHEELER, J.   We think the maxim, *respondeat superior*, applies in this case, by every test which the law has established to determine the responsibility of the master.   The overseer was placed over the slave to direct his actions and control his conduct in doing his employer's business.   He was clothed with all the power and authority of the master, or owner, for that purpose. If the slave was guilty of misconduct, it was a duty imposed on the overseer, by his agency, to chastise him.   In the infliction of such chastisement, he was acting strictly in the line of his duty to his master and in the performance of his master's business. And his employment imposed on him the necessity and duty of judging for the master of the occasion for chastisement.   It necessarily devolved on him, by reason of his employment, to decide when chastisement was proper, and to inflict it when necessary.   In inflicting the chastisement then, he was acting strictly in the line of duty to his employer; it was an act done in the course of his employment, and contemplated by it; and the maxim *qui facit per alium facit per se*, applies equally as if the overseer had performed the act in the presence and under the immediate command of his employer. He was doing his master's business; the business which he was authorized by his employment to do. If, then, he did it so negligently, carelessly or unskilfully, or recklessly, as to cause injury to the property of another, clearly the rule *respondeat superior* applies.   (Story on Agency, Sec.

452; Henderson v. Railroad Company, 17 Tex. R. 560; 14 Howard R. 468.)

It is clearly the law, that the master is not liable for the unauthorized, the wilful, or the malicious act or trespass of his servant, in those things which do not concern his duty to his master, and which when he commits he steps out of the course of his service. (2 Kent, Com. 259–60; 8 Term R. 533; 17 Mass. 508.) The case of Wright v. Wilcox, (19 Wend. 343,) cited by counsel for the appellee, was decided upon this principle. The Court say : " It is difficult to infer from the evidence anything short of a design in Stephen, the servant, to throw the plaintiff's boy from the wagon." The whipping of the horses, if done for that purpose, was a turning aside from the master's employment and the servant's duty. It was a stepping aside from the master's service, to do an act, which did in no way concern the servant's duty to his master, but was the servant's own wilful act in a matter entirely his own, and not his master's. Hence the Court held it a plain trespass, for which the master was not liable any more than if his servant had committed any other assault and battery. By saying " the dividing line is the wilfulness of the act," the Court evidently mean, as it is afterwards expressed, " a wilful act of mischief," done by the servant, aside from his master's business, of which it may be said: " In that particular affair, there is, then, no longer the presumed relation of master and servant." But while that relation subsists; while the servant is engaged in doing his master's business, and has not turned aside from it to perform some act of his own disconnected with it, it is clearly held by this and all the authorities, that the master is responsible for the misfeasances, negligences, and torts of his servant ; and this even though the master did not know of his servant's act, or neglect, or it was done contrary to his express command. The Supreme Court of the United States in the Philadelphia and Reading Railroad Company v. Derby (14 Howard, 468,) lay down the doctrine thus : " The rule *respondeat superior*, or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent or deceitful. If it be done in the course of his employment, the master is liable ; and it makes no difference that the master did not authorize, or even know of the servant's act or neglect, or even if he disapproved or forbade it ; he is equally liable, if the act be done in the course of his servant's employ-

ment." (Id. 486.) The Court say there may be found, in some of the numerous cases on this subject, *dicta* which, when severed from the context, might seem to countenance the doctrine that the master is not liable if the act of his servant was in disobedience of his orders. But a more careful examination will show that they depend on the question whether the servant, at the time he did the act complained of, was acting in the course of his employment, or in other words, whether he was or was not, at the time in the relation of servant to the defendant. (Ib.) This is the true test by which to determine the liability of the master in all cases like the present: Was he, at the time he did the act complained of, acting in the course of the service? If so the master is responsible; but if not, if he had stepped out of the course of the service, the master is not responsible. This was the distinction taken in Wright v. Wilcox, cited above; and the ground of the decision was, that in the act complained of, the servant had turned aside from the service to pursue an object of his own, disconnected from the service. Putting the case of a servant driving a wagon for his master, who should drive it violently over a man with intent to injure him, the Court say: "Now the authorities deny that when the servant wilfully drives over the man, he is in his master's business. They hold it a departure, and the going into the servant's own independent business. And so they held the whipping of the horses purposely to throw the boy from the wagon in the case before them. But the present is a very different case. Here the servant, the overseer, was acting in the course of his employment. In chastising the negro for misconduct, he was exercising the authority confided to him by the master: he was doing his master's, and not his own independent business, as in the case referred to. It cannot be said, as in that case, that he had taken up a new and distinct object of his own and was engaged in executing that. If he performed the service, which he was authorized to perform, in an improper manner; if he did it so carelessly, negligently, unskilfully, or recklessly as to occasion an injury to the plaintiff, it is precisely the case in which all the authorities agree that the master is responsible; because it is the duty of the master to employ servants who are honest, skilful and careful. (2 Kent, 259; 1 Blacks. 431.) And this accords with our decision in the case of Mills v. Ashe. (16 Tex. R. 295.) It is said that it is to be deemed the wilful and malicious act of the overseer, because the chastisement of the slave occasioned his death; and

every homicide is presumed to be malicious, until the contrary appear. If the overseer were upon his trial for the homicide, that principle might apply ; but it has no application in the present case. This is a case of civil, and not of criminal responsibility. The law will not presume that the act of the servant was an unauthorized, wilful and malicious trespass, and departure from the course of the service in which he was engaged for his master, because of the destruction of the life of the slave, and the consequent damage to the plaintiff. There is no evidence that the overseer intended to take the life of the slave ; or that he intended to do more than to chastise him for misconduct, as he was authorized by his employment to do. It only appears that he was engaged in doing his master's business ; but for the want of due and proper discretion, skill or care, or from some other unknown cause, he did it so very illy as to cause the loss to the plaintiff of his property. For that loss the defendant is responsible. If it were otherwise, there would be no case where the master would be responsible for an injury occasioned by the want of proper care, skill and circumspection in his servant to whose care and conduct he had intrusted the property of another.

We are of opinion that the judgment be reversed ; and the case having been submitted to the Court upon an agreed statement of facts, a jury being waived, such judgment will be here rendered as the Court below ought to have rendered.

Reversed and reformed.