Denio, C. J.
In my opinion, the learned judge before whom this case was tried committed- two capital errors; First. He refused to charge the jury that the plaintiff was bound to conform to the rules and regulations of the company, by showing his ticket to the conductor when requested so to do. As a substitute for this direction, he charged that' a passenger was bound to exhibit his ticket when reasonably requested; and he added that if the conductor knew the plaintiff had paid his fare he had no right to expel him from the cars, although he refused to show his ticket. The defendant was entitled to the instruction asked for without qualification.
It was proved that the defendant’s company had established a regulation by which passengers were required to exhibit their tickets, when requested to do so by the conductor, and that in case of refusal they might be removed from the cars. If this was a reasonable regulation, the plaintiff was bound to submit to it, or he forfeited his right to be carried any further on the road. In my opinion the rule was reasonable and proper, and in no way oppressive or vexatious. In the first place, it was easy to be complied with. The railroad ticket is a small slip of paper or pasteboard, which may be conveniently carried about the person; and it involves no conceivable trouble for the passenger, when called upon at his seat by the conductor, to exhibit it to him. Then no one can question but that this or some similar arrangement is absolutely necessary for the company, unless they are willing to transport passengers free. A train of railroad ca’-s frequently contains several hundred *459 passengers, a portion of them constantly changing as the tra..n passes stations where persons are received and discharged. The tickets, which are given as evidence of the payment of fare, are of as many different kinds as there are stopping places on the road; each being for the distance or to the place for which the passenger has paid his fare. The conductor must necessarily be a stranger to all or a large portion of his passengers. Unless he is allowed a sight of these evidences of the payment of fare, whenever he may require it, he is exposed to the chance of carrying the holder of them beyond the place to which he is paid, or of carrying persons who have not paid at all. If the conductor is not allowed to ascertain whether a passenger who has obtained a ticket still keeps it, there is nothing to prevent its being given to another passenger who has not procured one, and thus serving as a passport for several passengers. But it is argued that if the ticket has been once shown to a conductor, the passenger cannot reasonably be required to exhibit it a second time. If the duty of showing it were at all difficult or arduous, it might be a question whether the company would not be bound to devise some easier arrangement ; or, if it was possible that the memory and other-faculties of persons employed as conductors could be so cultivated that they could know and remember the persons of several hundred people, upon seeing them for the first time, and could, moreover, retain the recollection of the terms of the several tickets held by them upon their being once shown, it might be considered unreasonable to require a second exhibition of a ticket in any case. As this degree of perfection is unattainable in the present condition of mankind, I am of opinion that it was lawful, for this railroad company, to require that persons engaging passage in its cars should show their tickets whenever required by the company’s servants in trusted with that duty, upon pain of being left to travel the remaining distance in some other way in case of refusal. I do not think it was correct for the judge *460 to leave it to the jury, as he did, whether the request to show the ticket a second time was reasonable. The regula tion required that it should be shown, when requested by tho conductor, and the question for the court to determine was whether that regulation was lawful. (8 Co., 126, b.) Tho j udge would not pass upon that question, but submitted to the jury whether it was reasonable to require a conformity to it on the part of the plaintiff. There was no evidence tending to show that the conductor wished to vex the plaintiff, or put him to inconvenience. After the plaintiff had purchased his ticket and taken his seat, and had once exhibited the ticket, the train had stopped at a station (Wellsville), and had again started on its course. Then the conductor desired to see the ticket and was refused. He may not have been able to remember, if he knew that the plaintiff had paid fare and had a ticket, whether it was for Wellsville or for a place beyond that station; or he may not have remembered his person so as to be able to determine whether he got on at Wellsville, or had come from Hornellsville, or some place further west. True, Mr. Crandall informed the conductor that the plaintiff’s fare was paid, and that he had a ticket, and Mr. Crandall may have been known to the conductor to be a truthful person, or he may have been an utter stranger. The company, however, had a test far more convenient to all concerned "than the taking of testimony, to wit, the exhibition of their own ticket, which the plaintiff had in his pocket, but which he pertinaciously refused to show.
It is true, the judge put it to the jury to say whether the conductor knew that the plaintiff had paid his fare. Ordinarily the law would hold that what a person knows at one time he should be taken to know and remember at a short distance of time afterwards. The conductor had seen the plaintiff’s ticket, and had some opportunity of studying its contents; and under this charge the jury would necessarily find for the plaintiff. The judge made no account *461 of the peculiarity of the circumstances; of the number of persons the conductor would be obliged, in order to protect the company under this rule, to recognize and remember; of the divers kinds of tickets which must be used, and of the haste with which this business must necessarily be done. It was precisely in consideration of these circumstances that une rule was made, and that ro was ••«asonable and therefore lawful. If the judge had submitted it to the jury whether the conductor knew and remembered that the plaintiff was traveling under a ticket which extended • to the place where they then were, and whether his conduct in requiring a second sight of the ticket was caused by a desire to harass the plaintiff, the o- ly objection, so far as I can now see, would have been that there was not the slightest evidence to raise such a question. But this was not the point submitted. It was, whether he knew that the plaintiff had paid; and as he had shortly before seen the authentic evidence of such payment, the jury would necessarily find, as they did, that he had such knowledge.
The other error which I have supposed to exist in the charge is, that the judge held, in effect, that if the plaintiff’ offered to show his ticket, or did show it, after the cars had been stopped in order to put him out for refusing to show it, the conductor should not have persisted in expelling him. The request assumed that the jury might find that the conductor was right up to that time; and the poir.-: decided was that, though this were so, the plaintiff saved the forfeiture by this late compliance with the company’s rule. This question, like the other, requires a consideration of the peculiar character of this new mode of transporting persons. Railroad trains are run according to a scheme in which the time required in passing from one point to another, and the time required for the necessary stoppages, is accurately calculated. Any derangement or departure from the time fixed is exceedingly hazardous to *462 the safety of the company’s property and to the lives of the passengers and the persons employed in running the train. The most horrible calamities have often been the result of such derangements. A train of railroad cars cannot be stopped and again set in motion so as to attain its former speed, without considerable delay; and if one passenger, by his unjustifiable humor, can cause the cars to stop, another may do the same thing, and the utmost irregularity may be brought about. The rule, therefore, was in my judgment plainly reasonable which imposed a forfeiture of his right to proceed further in the cars upon a person who should refuse to show his ticket to a conductor, when requested. Having forfeited his right by his improper conduct, it was for the company or its agents to say whether he should be retained after having occasioned the inconvenience of a stoppage by his pertinacity.
There are some other questions in the case which I have not thought it necessary to examine, as those which I have mentioned are necessarily fatal to the judgment. I am in favor of a reversal.
Brown, J.
The instructions which the judge, upon the trial of this action, gave to the jury, and also those which he refused to give when requested by the counsel for the defendant, involve an inquiry into the rights and duties of the company under the contract which is the basis of the plaintiff’s claim.
The defendant is a carrier of passengers for hire by railroad. “ It is bound to give all reasonable facilities for the reception and comfort of passengers, and to use all precautions, as far as human care and foresight will go, for their safety upon the road, and is answerable for the smallest negligence in itself or its servants.” (2 Kent's Com., 601.) Transportation by railway is one of the highest efforts of science and art, and imposes upon those employed in it a degree of care, circumspection and diligence unknown to *463 other modes of conveyance. It implies also a degree of authority in the direction and management of the trains, in their progress over the road, and in regard to the time and manner in which passengers shall enter and depart from, and the conditions upon which they are to remain within the cars, little less than absolute. Such regulations as will enable a railroad corporation to execute its difficult and responsible duties, insure the comfort and safety of its passengers, and protect itself from wrong and imposition, it has an undoubted right to prescribe, provided such regulations are reasonable and just. It has a right to require that passengers shall preserve order; that they shall be seated, and not stand up in the passage way or upon the platforms; and that they shall abstain from any act which tends to impede or interrupt the conductors and managers in the transaction of their necessary business. A railroad company has also a right to prescribe how and at what places the passengers shall pay their fare or passage money, and what shall be the evidence to the conductor that such money has been paid and of the passenger’s right to ride upon the train. It may also require passengers to accept tickets temporarily; to exhibit them from time to time upon the request and for the information of the conductors; and, finally, to redeliver such tickets, upon request, before leaving the cars. Some of these regulations are necessary to insure the safety of the passengers themselves, others to insure the payment of the regular fare and to protect the carrier from imposition. They may be enforced by such reasonable means as the company may have at its command ; for, without some measure of power to give them effect, such regulations would be of little avail. (Commonwealth v. Power, 7 Metc., 596; Hall v. Power, 12 id., 482.)
By the rules and regulations of the New-York and Erie Railroad Company, every passenger is required to exhibit his ticket, if he has one, to the conductor, upon request, or, if he has no ticket, to pay his fare and acceptance and *464 upon refusal to comply with the regulation, it is made the duty of the conductor to remove such delinquent passenger from the cars. The regulation, it appears to me, is not unreasonable, for the company is responsible for its unjust application, or for enforcing it with undue severity. No well-disposed passenger will refuse to accept a ticket and exhibit it as often as the conductor may reasonably desire it; and it is quite usual to place the ticket in some conspicuous place about the person of the passenger, so as to supersede the necessity of repeated inquiries. If one passenger may at his pleasure contemn the regulations of the company and put the conductors at defiance, all may; and such a result would put it out of its power to protect itself from injury and to fulfill its duties to those who committed themselves to its charge. The regulation referred to assumes that an individual within the cars, who refuses, upon request, to exhibit to the conductor the customary evidence of his right to a seat, or to pay for and accept such evidence, is an intruder and a wrong-doer, and has no legal right to remain where he is. Such, I think, should be the legal, as it certainly is the natural presumption. It is therefore quite right that he should be requested to leave the cars when he manifestly has no right to remain. If he refuses, the conductor may then employ so much force as, may be necessary to effect his removal, at the same time using no violence and doing no unnecessary injury. If, however, the passenger refuses to comply, and resists, and injury happens, it is an injury for which the company is not responsible, for it is a result attributable to his own wrongful conduct.
The counsel for the defendant requested the judge to charge the jury, “ That when the plaintiff paid his fare and took his ticket from the ticket office at Hornellsville, for Scio, he agreed to conform to the rules and regulations of the company by showing his ticket to the conductor when requested so to do.” The judge declined so to charge, and the defendant excepted. In this I think he *465 erred. It appears to me the proposition embodied in the request is too plain to admit of a doubt. The regulation was a necessary and a reasonable one, and unless railroad passengers are above all control they are bound to observe reasonable and proper regulations while within the cars, claiming the services and -the care and foresight of the company. The refusal to instruct the jury as requested, coupled with what the judge said to them afterwards, left them to infer that if the conductor knew the fare had been paid, the plaintiff was justified in refusing to show the ticket. The judge then charged “that the ticket being the ordinary evidence of the payment of fare, a passenger is bound to exhibit his ticket when reasonably requested to do so; but-if the conductor knew that the plaintiff had paid his fare he had no right to expel him from the cars, although he refused to exhibit his ticket.” To this, also, the defendant excepted. This part of the charge imports that, if the conductor knew the plaintiff had paid his fare, the latter was under no obligation to show his ticket, and that the sole office of the ticket is as evidence that the fare has been paid. In this particular I also think the judge erred. It was no justification to the plaintiff though the conductor did know that the fare was paid. The ticket does not bear the name of the passenger to whom it is issued. It is usually inscribed with the day when and the office from whence it is issued and the place to which the passenger proposes to travel. But it is as good in the hands of a stranger as it is in the hands of the person who paid for and took it from the office, and the conductor has the right to see it, from time to time, that he may be assured it is not made the instrument of carrying two passengers in place of one. If the rule laid down by the court is correct, and the conductor has only a right to see the ticket when he has no knowledge that the fare has been paid, there is nothing to prevent a passenger, who has paid his fare with the knowledge of the conductor, from oassing his ticket over to a stranger to be used as evidence
*466 that he also has paid his fare and acquired a right to be carried in the cars. The ticket is the propercy of the railroad company, and is a part of the means by which it • conducts its business. It is delivered to the passenger to be held by him, temporarily, for a special purpose, and who, to that extent, acquires a special property in it. When the journey is ended, or about to end, it is to be redelivered to the conductor. It serves a threefold purpose: it is evidence in the passenger’s hands that he has paid his fare and has a right within the cars; it insures the payment of the passage money by all who take seats, and when it is redelivered to the company .it becomes a voucher in its hands, against the office or agent who issued it, in the adjustment of its accounts. To say that the passenger is bound to exhibit the ticket when reasonably requested, but if the conductor knew the passenger of whom the request is made had paid his fare, .he had no right to enforce his request, is a contradiction in terms which could do nothing less than mislead the jury from the true question before them.
If I am right in the opinion that the regulation for the exhibition of the passengers’ tickets, is a necessary and reasonable regulation, and one which may be enforced by removing the refractory passenger from the cars, then the court also erred in the instructions given to the jury for .estimating the damages. The counsel for the defendant " requested the justice to charge that the defendant was not liable for the injuries which the plaintiff may have sustained in consequence of the assault in question, by their agents .and servants.” . The justice declined, and told the jury “ that if in pursuance of the defendant’s orders and instructions, the plaintiff was wrongfully ejected from the cars, ¡and was wantonly treated by the conductor or agents of the defendant in so ejecting him, the defendant is liable for the injuries resulting to the plaintiff from such ejection.” The jury were also told that they “ might award damages in their discretion, as a compensation for the personal ill *467 treatment to which the plaintiff had been subjected in ejecting him from the cars.” The defendant excepted to the refusal of the court to charge as requested, and also to the instruction given them in respect to the measure of damages.
The object of the request was that the court should discriminate between those acts of the company’s agents done in the execution of its directions, and those done in excess of its instructions, and without authority or approbation. This, I think, should have been done. The plaintiff, may have been injured by the use of unnecessary force to effect what the company had a right to do. The conductor, and those who aided him, are not the company, They are its agents and servants, and whatever tortious acts they commit by its direction, it is responsible for and no other. This is upon the principle that what one does by another he does by himself. For injuries resulting from the carelessness of the servant in the performance-of his master’s business, the latter is liable. But for the wilful acts of the servant the master is not responsible, because such willful acts are a departure from the master’s business. ( Wright v. Wilcox, 19 Wend., 343, and the cases there referred to.) In removing a passenger from the cars who refuses to pay his fare or exhibit his ticket, the servants of the company are limited to the use of just so much force as may effect that object, and no more. They are not to resort to force at all, until it becomes absolutely necessary, by the refusal of the passenger to depart upon request; and when they do resort to it they are to use no more than becomes sufficient, and they are to do no unnecessary injury to the party. This is the extent of their authority, and if they exceed it, they, and not the company, are responsible for the consequences.
The defendant had a right, I think, upon the trial, to have the attention of the jury directed to this distinction, for it is impossible to say, from an examination of the bill of exceptions, upon what ground so large an amount of damages was rendered.
*468 There should be a new trial, with costs to abide the event.
Comstock, J.
If the plaintiff had forfeited his right to be carried as a passenger, by refusing to show his ticket when requested to do so by the conductor, and if the right was not restored by subsequently complying, then his expulsion was lawful, and he has nothing to complain of, unless greater force and violence were used than his own resistance rendered necessary. The verdict of the jury was for a wrongful expulsion and not for an excess of force.
If, on the other hand, the conductor had no right to eject the plaintiff from the train after he had complied with the request and produced the ticket, then I do not see on what principle the defendant can be made liable for the wrong. The regulation, and instructions to the conductor, as we have said, were lawful, and they did not, in their terms or construction, profess to justify the trespass and eviction. The result is, that the wrong was done without any authority, and therefore that those who actually did it are alone answerable. The judge was requested to charge the jury that the plaintiff, if entitled to recover at all, could only recover such damages ás he had sustained in consequence of the defendant’s not performing its contract to carry him to Scio, to wit, damages to his business. The judge refused so to charge, but did charge that the plaintiff could recover, if at all, for personal ill treatment; in other words, for the unlawful assault and battery. It seems tc me that the request was essentially right, and that the refusal and charge were erroneous. The request was made and the charge given upon the theory that the plaintiff’s expulsion was unlawful. But if unlawful, then the company had not authorized it. There was, no doubt, an implied contract to carry the plaintiff to the place for which he had bought his ticket, and that contract was broken. The defendant, being bound to carry him to Saio, might be liable *469 for a breach of the engagement, even if the plaintiff had been expelled by another passenger. The defendant was bound even to prevent an unlawful expulsion and to carry the passenger through. But this is a liability entirely different from the one enforced at the trial. The conductor, according to the plaintiff’s own showing, without authority from his principal, assaulted and expelled him from the train; and, under the charge given to them, the jury rendered their verdict for the personal wrong and outrage. This I think is contrary to the law of the case.
The conductor, it is true, testified that he acted “in pursuance of instructions from the defendant.” By this I understand merely that he pretended to act, and justified his conduct, under the regulation and instructions which have been referred to. But if he mistook the authority conferred upon him, both when he committed the trespass and when he was examined as a witness, it cannot alter the law or change the rights of the parties. His own mistake as to the extent of his powers cannot make the railroad company liable for acts not in fact authorized.
The judge also charged that a passenger is bound to exhibit his ticket when reasonably requested to do so; but if the conductor knew that the plaintiff had paid his fare, he had no right to expel him from the cars, although he refused to exhibit his ticket. It had been proved that the request was made just after the train had left a station, and while the conductor was going through and examining the tickets of passengers. The plaintiff, when called upon, refused to exhibit his ticket, saying that he had once shown it, referring to some previous occasion after he had taken his seat. It will be seen therefore that the request was made upon a proper occasion, in the usual round of the conductor’s duties; and no suggestion was made on the trial that such request was dictated by any mere caprice or whim, or that it was fraudulently made in order to get a pretext for expelling the plaintiff from the train. Now, the *470 regulation of the company required the plaintiff on this occasion to show his ticket, and it contained no qualification depending on the previous knowledge of the conductor that the fare had been paid. It is, however, plausibly urged that, as the object of exhibiting a ticket is to show the conductor that the fare has been paid, he has no right to enforce the regulation if he already knows the fact. Still, I am of opinion that this is not a sound view of the question. The difficulty is in the nature of the inquiry which a jury must always be allowed to entertain, if we adopt this suggestion. How, it may be asked, is it to be proved that the conductor knew the passenger had paid his fare, if he refuses to exhibit the ordinary evidence of the fact? It can only be proved by showing that the ticket had already been shown to the conductor on some former occasion, or that the passenger himself or some third person informed him that the fare had been paid. I know of no other mode of getting at the fact; but the moment we admit any or all of these modes of inquiry, the regulation itself becomes entirely worthless. The conductor clearly is not bound to take the. word of a passenger who refuses to comply with the regulation, nor the word of a third person; and still more clearly it will not do to say that one exhibition of the ticket must suffice in all cases or in any case. The rule is a reasonable one, that the conductor may ask to see the tickets of passengers after leaving each station where new passengers are taken • up. If a passenger refuses to comply with such a rule, and is expelled, the law should.not allow him to allege and try the fact of the conductor’s knowledge of the payment of the fare.
Without examining other questions, I am of opinion that the judgment should be reversed and a new trial granted.
All the other judges, except Bowen, J., who dissented, concurred in this result, the court, however, declining to
*471 pass upon the question last discussed by Denio, C. J., or that first discussed by Comstock, J.
Judgment reversed and new trial ordered.