By the Court—Pierrepont, J.
The Sixpenny Savings Bank was incorporated by an act of the Legislature passed June 4th, 1853. (Laws of 1853, p. 670.) The Trustees named in the act and their successors were created a body corporate with perpetual succession, “ by the' name of The Sixpenny Savings Bank of the Empire City.” The business of the corporation was confined to “receiving deposits from mariners, tradesmen, clerks, mechanics, laborers, minors, servants and others, and investing the same,” in the mode prescribed. (§ 6 of act.)
By section 2 it is provided that “ the said corporation shall not, directly or indirectly, deal or trade in buying or selling any goods, wares or commodities whatever, except in cases where it is authorized to do so by the terms of this act," &c.
Section 4 provides that “ the business of the said corporation shall be managed and directed by the said Board of Trustees, who shall elect from their number a President, two Vice-Presi-. dents, and such other officers as they may see fit; eight of said Trustees, of whom the President and one of the Vice-Presidents shall be one, shall form a quorum for the transaction of business, and the affirmative vote of at least seven members of the Board shall be requisite for the making of any order for investment,” &c.
By section 7 the Board of Trustees are empowered to pass bylaws for the general management of the affairs of the corporation.
An examination of the charter and by-laws of the defendants shows that the corporation had no authority whatever to engage in any manner in the purchase and sale of goods, and the case does not disclose any practice or act inconsistent with the duties and restrictions imposed by law upon the defendants. They are charged with the conversion of certain machines and tools to *305 their own use, and a judgment of $4,801.80 has been obtained against them for such conversion.
It does not appear that the defendants have ever used or sold the property claimed to have been by them converted, or that they have ever derived any advantage whatever therefrom, or that the Trustees ever had knowledge of, or in any wise sanctioned the acts of which the plaintiff complains.
The acts complained of are those of Mr. Miles, the Vice-President of the Bank. The substance of all he did before the sale was to forbid the sale of fixtures belonging to the realty or of anything belonging to the defendants. “After the sale ” Jonathan Purdy, a builder, who was present at the sale, says, “ the plaintiff and Miles were talking about the delivery of the articles sold; Miles said he did not want anything but what were fixtures, and until it was ascertained what did belong to the Bank he did not want anything removed. Thomson asked how long it would take to ascertain that; Miles replied that as soon as he could see the attorney for the Bank, and ascertain what belonged to the Bank, he would make no further objection'; Miles proposed that their attorneys should meet together. Thomson assented and agreed that the two attorneys should meet.”
• When the'formal written demand was made upon Mr. Miles at his counting-house in Gold street, “ he said he would lay it before the Board of Trustees of the Bank,” and said “he could not at present give an answer.”
The President declined to have anything to do with the matter, but referred the plaintiff to Mr. Miles.
After the formal demand and before the commencement of this suit the attorneys of the respective parties met, and the defendants’ attorney asked the plaintiff’s attorney why he did not take the articles, stating that the Bank had no objections to his taking them, to which the plaintiff’s attorney replied that he should rely upon the demand made, and that Thomson wanted to get the value'of the tools.
Soon after the commencement of this action the attorney of the Bank addressed a note to the plaintiffs attorney, referring to this affair, above mentioned, and asking him to take the articles and discontinue this suit, which proposition the plaintiff did not accept.
*306 At the close of the testimony on both sides, the counsel for the defendants requested the Court to charge the jury, 1. “ That the general authority given to Mr. Miles to manage the business, of the Bank in the absence of the President, did not empower him to commit the trover and conversion complained of.”
■ 2.' “That proof must be given that Miles had specific authority to do the acts complained of, and that in the absence of such proof the presumption of law is that no such authority had been conferred on him.”
■ 3. “ That the proof was insufficient to make; out a conversion.”
4. ' “That if Mr. Miles did not-intend to assert a title to the goods in the Bank, ‘but merely intended to postpone answering the.demand until -he should have received instructions from the Trustees or ascertained the rights of the parties, and he acted in good faith in the matter, the defendants ‘are not liable.”
5. “ That the offer made by the defendants’ attorney on the 12th of February, was a bar to a recovery here.”
' The Court refused so to charge as to each request, and the defendants’ counsel excepted.
- The Court-charged the jury as follows:
“The defendants became owners of the building in which the articles in question were, on the 15th January, 1857; the articles were in the building at the time; the defendants were therefore lawfully in possession of the articles; the articles were sold under foreclosure of a chattel mortgage, on 30th January; the articles were at the time in the building; the plaintiff was the purchaser; he became entitled to have possession of the articles; to make the- subsequent possession of the. defendants tortious, it' was necessary that a demand of possession should- be made of the defendants, and that defendants should refuse to comply with the demand, or that defendants should undertake to exercise dominion over them in exclusion and" in defiance of" plaintiff’s title: evidence of this fact, the property being in the actual possession of the defendants, would be evidence of a conversion of the articles, which would be conclusive until the contrary was proved, as by the pleadings the defendants disclaim all title in the goods themselves. The principal question turns on the fact" Of demand and refusal, or assertion of adverse control over the property; to constitute a proper demand, it must have been made *307 by a person entitled to make it, and of the party having the possession and control of the property, and to make out the ease of a conversion, the refusal must be by the party having the possession or control, or legally bound to make the delivery, or by a person authorized by such party; if you shall be satisfied on the evidence that Miles was acting with the knowledge and sanction of the Trustees or by authority and sanction of the President, it is enough to make his acts in the premises binding on the defendants; you will then consider the evidence respecting the demand and refusal, and the conduct of the defendants, in respect to the property. Miles, at the sale, forbade the sale of property in which defendants had any right, but did' not point out to auctioneer that property; he then told Leggett not to deliver any articles purchased at the sale, if parties who had purchased at the sale should call to take them away; his conduct, if Miles was acting with the knowledge and authority of the Trustees or President, would amount to a conversion of the property.
“ But if you shall be of opinion under the evidence that the parties shortly after agreed that their rights should be referred to the lawyers of the respective parties, this, though the first meeting fell through, would' be a waiver of this conduct of Miles as a tortious act, and the case- would then turn on the question of demand and refusal- But if such was not the character of that arrangement it would have no such effect.
“The plaintiff contends that it was a mere agreement that plaintiff should suspend the assertion of his rights until Miles could consult his counsel. The plaintiff was not bound to wait an unreasonable time, and from 30th January to 12th February was an unreasonable time.
“ Then as to the demand and refusal.
“The demand was in writing served on Miles; if Miles acted in the transaction with the sanction or assent of the Board of Trustees, he had authority to receive the demand and to refuse.
“ Upon receiving the demand he was bound to deliver the property, or to refuse to deliver. After all that had taken place it was not sufficient for Miles to say he would lay the matter before the Board of Trustees.
“ The defendant's contend that the subsequent offer by defendants’ attorney, before suit brought, is a bar to this action. This *308 is not so. If that offer was tantamount to an absolute offer to deliver possession of the property, and plaintiff under it had gone and taken possession of the property, this, while it would not take away the right of action, might be considered on the question of damages, and go in diminution of them. But the plaintiff did not act on it, nor is the evidence under it very clear that he could have done so. Kor if he could was he bound to do so. In one sense only could this offer be material. If you shall be of opinion that both agreed that the demand by plaintiff should be held in suspense until Cromwell and Parsons had met and-determined whether the Bank was entitled to any of the articles, and that the interview at which this offer was made was an interview between them for that purpose or that the offer ■was the result of their deliberations, then the offer, if full and ■complete, to surrender the possession of the whole, would be a bar; but the evidence will not justify such a construction.' A meeting was appointed shortly after the sale. Plaintiff’s attorney kept the appointment. Defendants’ did not. Plaintiff had, some three days before the interview in question, served a written demand. The meeting at which the' offer was made was on other matters, and the subject was introduced as the parties were leaving the room.”
Thereupon the defendants’ counsel duly excepted to each of the following propositions contained in the charge, namely:
• 1. That a demand and refusal are conclusive evidence of a conversion, until the contrary is proved.
2. That defendant being owner of the building, it was in possession of the articles in question.
3. That if the jury should he satisfied, on the evidence, that Miles was acting with the knowledge and sanction of the Trustees, or by authority and sanction of the President, it is enough to make his acts binding on the defendant.
4. That the conduct of Miles at the sale, if he was acting with the knowledge and authority of the Trustees or President, would ¿mount to a conversion of the property.
5. That from the 30th January to 12th February was an unreasonable time.
6. That if Miles acted in the transaction with the sanction or .'assent of the Board of Trustees, he had authority to receive the *309 demand and to refuse, and that it was not sufficient for him to say that he would lay the matter before the Board of Trustees.
7. To the proposition in respect to the offer of 12th February.
8. To the proposition that the evidence will not justify such a construction as to make the offer on the 12th of February a bar.
9. That Miles’ answer to the demand was a refusal.
Where goods have been converted wrongfully for the benefit of a corporation, and they adopt the wrong by taking the avails of such conversion, the corporation is liable; and before the Code, an action of trover would lie, and now an action for the conversion of personal property in a like case may be maintained. (Yarborough v. The Bank of England, 16 East, 6; Beach v. The Fulton Bank, 7 Cow., 484.)
But in the case before us it is difficult to see how there has been any conversion of the plaintiff’s property by the defendants.
The trespass complained of was not authorized by the Bank, nor did they afterwards sanction it or receive the avails of it, nor were the acts charged as having been done by Miles within the scope of his real or apparent authority as an officer of the corporation. If the Vice-President of a Bank commits a trespass quite outside of his official duties, and not within the real or apparent scope of his agency, without authority from, or subsequent ratification by, the Bank, he does not thereby render the corporation liable for his tortious acts. (Vanderbilt v. The Richmond Turnpike Co., 2 Comst., 479; Mechanics' Bank v. N. Y. & N. H. R. R. Co., 3 Kern., 633; Weed v. Panama R. R. Co., 17 N. Y. R., 362; Wright v. Wilcox, 19 Wend., 345.)
The Judge charged the jury, “that if Miles was acting with the knowledge and sanction of the Trustees, or by authority and sanction of the President, it is enough to make his acts in the premises binding on the defendants; and that his conduct, if Miles was acting with the knowledge and authority of the Trustees or President, would amount to a conversion of the property.”
To this part of the charge of the learned Judge we think the exception was well taken. The President could no more confer authority upon the Vice-President to do the acts-complained of, than the Vice-President could confer the same authority upon the President; no such authority resided in either, and neither could *310 by their wrongful acts bind the Bank under the circumstances of this case.
The Court further charged that, “ upon receiving the demand he (Miles) was bound to deliver the property or to refuse to deliver. After all that had taken place, it was not sufficient for Miles to say he would lay the matter before the Board of Trustees.” To this there was an exception. •
If Miles had no authority from the Trustees to act in the matter, he could not bind the Bank by refusing to act until-authorized by the Board of Trustees; and we are inclined to think that this part of the charge was .erroneous, and that it might have misled the jury.
It is abundantly settled that a qualified refusal like this does not amount to a conversion of the property, and that the question of conversion is one of fact to be determined by the jul7-
In the case of Green v. Dunn, (3 Camp., 215,) Lord EllenboROUGH held that a qualified refusal was not evidence of conversion.
And in Watt v. Potter, (2 Mason, 80,) Judge Story, delivering the opinion of the Court, says:
. “ The first question is whether there has been a conversion in this case. This is a question of fact to-be judged of by the jury under all the circumstances. A demand and refusal to deliver is not in itself a conversion; but it is evidence from which a jury may presume a conversion.”
The case of Alexander v. Southey, (5 Barn. & Ald., 247,) was an' action of trover for printing types and other goods, and was tiled before Justice Best; it appeared that the defendant, who was a servant of the Albion Insurance Company, had in his custody in-a.warehouse, of which he kept the key, certain goods of the plaintiff) which had been carried to the warehouse of the Insurance Company by the servants of the Company.
The only evidence of conversion was, that when the plaintiff demanded the goods, the defendant said that he could not deliver them up without orders from the Albion office. The learned Judge left it to the jury to say whether this qualification of the defendants’ refusal was a reasonable one, telling them that if so .there was not sufficient evidence of a conversion. The jury *311 found for the defendant. Denman moved for a new trial on the ground of misdirection.
Abbott, Ch. J., Bayley, Holroyd, and Best, J. J., all concurred and held that there was no misdirection, and that “ if there be a qualification annexed to the refusal the question then is whether it be a reasonable one, and that such question is for the jury.” (See also Wilde v. Waters, 32 Eng. L. & Eq. R., 423; Mount v. Derick, 5 Hill, 456; Gunton v. Nurse, 2 Brod. & Bing., 447; Fouldes v. Willoughby, 8 Mees. & Welsb., 540; Hayward v. Seaward, 1 Moore & Scott, 459.)
The Judge told the jury that the subsequent offer by the defendants’ attorney before suit brought was not a bar to the' action, and the defendants’ counsel excepted to this part of the charge.
The case of Hayward v. Seaward, (1 Moore & Scott, 459,) was an action of trover to recover a steam boiler. The plaintiffs owned the boiler and demanded it in the month of October, 1830, and the defendants refused to deliver it. On the 12th of November following, the plaintiffs’ attorney directed a letter to the defendants and stated that he was instructed to commence an action against them and asked the name of their attorney. On the following day the defendants’ attorney addressed a letter to the plaintiffs’ attorney stating that the plaintiffs might take the boiler away. On the same day a writ was issued against the defendants.
The cause was tried before Tindal, Ch. J., who told the jury that the plaintiffs were not entitled to recover- after the offer of defendants made by the letter of the 13th of November to give up the boiler.
The Justices on the hearing, all concurred, holding that the ruling was correct, that the demand and refusal was only evidence and not conclusive of the fact of conversion, and that the refusal was cured by the subsequent offer made by the attorney before the writ issued. A new trial should be granted.
Woodruff and Moncrief, J. J., concurred in reversing the judgment on the ground that the defendants upon the facts proven were not liable for the acts of Miles, their Vice-President.
Judgment reversed, and a new trial ordered, costs to abide the event.