R. WILSON MORE ET AL.

v.

J. L. BENNETT ET AL.

*Contracts in Restraint of Trade—Stenographers—Practice.*

1.   The question for determination in respect to contracts in restraint of trade is, whether the restraint is such only as to afford a fair protection to the interests of the parties in favor of whom it is given, or so large as to interfere with the interests of the public; for whatever is injurious to the interests of the latter is void on the ground of public policy.

2.   An agreement which in its object or necessary operation tends to diminish competition, as to anything the public have for sale, or it is necessary the public should use, is void.

3.   An agreement between the members of an association composed of stenographers, that a certain schedule of prices should be charged by them, and providing that no member thereof should underbid another, is against public policy and void.   The law will not enforce any such undertaking.

[Opinion filed July 23, 1891.]

More v. Bennett.

APPEAL from the Circuit Court of Cook County; the Hon.
FRANK BAKER, Judge, presiding.

The declaration in this case set forth that all of the plaint-
iffs and defendants were by occupation and profession stenog-
raphers, and were members of an organization known as the
Chicago Law Stenographers' Association, which association
had adopted a schedule of rates, which were reasonable, and
for more than fifteen years have been the established rates
among law stenographers, and had been and are now, recog-
nized as reasonable and established rates by judges and mem-
bers of the legal fraternity of the city of Chicago and by law
stenographers; and that there had been during said time no
material variation from said rates among law stenographers,
and the rates are in every way reasonable and fair; and that
whereas, in consideration of the like promises and agreements
on the part of the plaintiffs, and the like payment of the mem-
bership fee of $5 by each of the said plaintiffs to become mem-
bers of said association, the said defendants did promise and
agree with the plaintiffs that they would be bound in their
charges for work by the schedule of rates adopted by said
association, and that in no case where the defendants had
knowledge of the existence of a contract or reporting arrange-
ment between the plaintiffs and any other person, would the
defendants attempt by underbidding the rate of charges estab-
lished by said Stenographers' Association, or other unfair
means, to secure said reporting, which rate was a reasonable
rate and long established among reporters, and was for trans-
cript not less than twenty cents per folio single copy, not less
than twenty-five cents per folio two copies, not less than
twenty-eight cents per folio for three copies, and the rate of
$10 per diem for attendance; and whereas, while said associa-
tion was in existence and the plaintiffs and defendants were
members thereof, the plaintiffs entered into a contract or report-
ing arrangement with the county of Cook, by which the
county of Cook employed the plaintiffs to report and furnish
as many copies of transcript as it should want of the proceed-
ings in the trial of a certain case then pending in the Criminal
Court of Cook County, and known as the Cronin trial, which

employment with the county of Cook, was on the following terms, to-wit:   At the rate of $10 per day for attendance, and the regular rates for transcripts, as established by the Stenographers' Association, the plaintiffs at the same time agreeing with said county to do the work if the county should demand it, at as low a rate as any reputable and established stenographer or firm of stenographers should in good faith bid for said work; yet the defendants well knowing the premises and the reporting arrangement aforesaid, did endeavor to . secure  from the county of Cook by underbidding and other unfair means, employment as law stenographers to report and furnish copies of transcript in the said trial, and made a bid by which the defendants offered to do the work at the following rates, viz. :   $5 per day for attendance, twenty cents per folio for a single copy, twenty-two cents per folio for two copies, and all copies above two copies free of charge.

And thereupon the plaintiffs, because of said bid of the defendants, were required by the county of Cook to meet the said bid of the defendants, or cease their employment on said trial, as by the terms of employment the county had the right to demand, and thereupon the plaintiffs, for the purpose of remaining in said employment, on said trial, did meet the said bill of the defendants, and afterward reported and furnished transcripts in said trial at the rate offered by the defendants, and did the work at the said reduced rates, so that by means of the premises and the said conduct of the defendants, the plaintiffs have been deprived of divers gains and profits, which otherwise would have accrued to them from reporting and furnishing transcripts in said trial under the regular rates of said Stenographers' Association, and in accordance with the terms of their original bid in their employment by the county of Cook, and have suffered damages of $3,000.

A demurrer to the declaration was sustained and the plaintiffs appeal.

Messrs. Matz & Fisher, for appellants.

The constitution and by-laws of a voluntary association signed by the members thereof, constitute a contract binding

More v. Bennett.

upon said members, so long as they remain in said association; and this extends not only to the relations of the members to the association but to their relations to one another.    Wells v. Ives, 97 N. Y. 222 (p. 228); Flint v. Pierce, 99 Mass. 68 (p. 70); White v. Brownell, 4 Abb. Pr. N. S. 193; Hopkinson v. Marquis of Exeter, L. R. 5 Eq. Cases, 63 (p. 67); White v. Brownell, 3 Abb. Pr. N. S. 327; Elsar v. Alford, 1 City Court Rep. (N. Y.) 123; 2 Am. Ency. Law and Eq. 708; Masters' Stevedores Ass'n v. Walsh, 2 Daly, 1.

In Wells v. Ives, 97 N. Y. 228, the court says:

" The provisions of the constitution and the laws of the association are obligations upon the parties as a contract."

In the case of Flint v. Pierce, 99 Mass. 68, in refusing to permit an outsider to hold an individual member of a corporation to one of the by-laws of the corporation, because there was no privity between the member and the outsider, the court says, on page 70 :

" The office of a by-law is to regulate the conduct and define the duties of the members toward the corporation and between themselves.    So far as its provisions are in the nature of contract, the parties thereto are the members of the association as between themselves, or the corporation upon the one side and its individual members upon the other."

In White v. Brownell, 4 Abb. Pr. (N. S.) 193, the court says:

" Individuals who form themselves into a voluntary association for a common object may agree to be governed by such rules as they think proper to adopt, if there is nothing in them in conflict with the law of the land, and those who become members of the body are presumed to know them— to have assented to them—and they are bound by them."

In Hopkinson v. Marquis of Exeter, the court says, speaking of a club:

" In order to secure the principal object of the club, the members generally enter into a written contract in the form of rules," and the court decides the rules binding upon the members.

In White v. Brownell, 3 Abb. Pr. Rep. (N. S.) p. 327, the

court says in speaking of the New York Open Board of Brokers:

"As this association is not organized in pursuance of any statute, nor are the terms of membership fixed by principles of the common law, it follows that the agreement which the members make among themselves on the subject must establish and determine the rights of the parties on the subject. The constitution of the association and its laws agreed upon by the members contain all the stipulations of the parties and form the law which should govern. * * * The court must regard the constitution and laws of this board as the contract by which all the members are bound."

In Elsar v. Alford, 1 City Ct. Rep. 124 (N. Y.), the court holds that the members of a voluntary unincorporated society are bound by the by-laws of such society, whether they are reasonable or not.

And there is this note to the case:

"An unincorporated society on the other hand is regarded as a sort of copartnership, and its articles of copartnership are binding on its members, so long as they agree to be bound by them."

See, also, Volume 2, Am. & Eng. Ency. Law and Equity, p. 708, where this proposition that the constitution and by-laws of an association constitute a valid contract is treated, and is shown to be well established.

Having established the proposition that there was a contract relationship existing between the members of the Stenographers' Association, we refer to the case of Collins v. Locke, L. R. 4 Appeal Cases, 674, as being conclusive of the further proposition that where many persons have entered into a contract, such as the contract in question, one of the parties to the agreement who is specially injured by the especial fault of another party to the agreement, may sue said other party in assumpsit without joining the remaining parties to the agreement, either as plaintiffs or defendants.

In this case four parties had entered into a written contract dividing up the stevedoring business of Melbourne, Australia, and making various covenants in regard thereto. Locke, one

More v. Bennett.

of the parties to the agreement, sued Collins, another party (without joining the other persons who signed the agreement), for the particular damage he had sustained by reason of a breach of the contract by Collins. The court sustained the claim of the plaintiff, Locke, his right to sue the particular wrongdoer without joining the other parties to the agreement being unquestioned.

In reference to the consideration of the contract, even were there no payment of $5 to become members of the association, which money was used for the general benefit of the members of the association, the mutual agreement to observe the constitution and by-laws of the association, to do certain acts, and to refrain from doing certain other acts, were a sufficient consideration and will support the contract. That a promise is a good consideration for a promise is well sustained. Funk v. Hogh, 29 Ill. 145; Cooke v. Murphy, 70 Ill. 96; Crane v. Hutchinson, 3 Ill. App. 30.

No appearance for appellees.

WATERMAN, J. It is impossible to reconcile the numerous cases upon the subject of contracts and combinations in restraint of trade. Beginning with the cause reported in Year Book 2d, Henry V, in which the irascible Judge Hall, three quarters of a century before the discovery of America, upon an attempt to enforce an obligation entered into in consideration that the defendant did not use his dyer's craft within the city for a certain time, to wit, for half a year, thundered out in bad French : " *A ma intent vous purres avoir demurre sur luy que obligation est void eo que le condition est encounter common ley, et per Dieu, si le plaintiff fut icy, il irra al prison tang il ul fait fine al Roy.*" (In my opinion you might have demurred upon him, that the obligation is void inasmuch as the condition is against the common law; and by G— if the plaintiff were here he should go to prison till he paid a fine to the king.) Down to the present time, the fluctuating opinions, based as they have been upon considerations of public policy, have shifted now in this direction, and then in

that, as cases decided upon what is thought to be for the best of the whole community, ever have and ever must, vary in accordance with the changing ideas of wherein the public welfare rests. If any rule can be said to be deducible from the authorities, it is that the question for determination in respect to contracts in restraint of trade is, whether the restraint is reasonable or not, that is, whether the restraint is such only as to afford a fair protection to the interests of the parties in favor of whom it is given, and is not so large as to interfere with the interests of the public. As the Supreme Court of this State say, in the case of Kraft et al. v. McConoughy, "Whatever is injurious to the interests of the public is void on the ground of public policy;" and again, " So long as competition is free, the interests of the public are safe;" it being understood that all general restraints of trade are unreasonable, and are, therefore, contrary to public policy, illegal and void. As to any restraint of trade, as, if it is unreasonable it is void, the question arises, what is meant by a reasonable restraint? Does it, as is argued in this case, in cases of this nature, and in contracts in respect to the sale of commodities, mean only that the restriction as to price shall be reasonable, or does it include more than this? If restricted to agreements as to price, can it be said that so long as any one individual is able and willing to sell flour for $5 a barrel, $6 a barrel is a reasonable price? In other words, in any cause wherein it clearly appears that one individual is able and willing to supply a commodity at a price considerably below what a dozen or a hundred experts may say is a reasonable price for such article, will the testimony of the great number of experts testifying as to their opinion of what is a reasonable price, be allowed to outweigh the undisputed fact that one individual, in the teeth of their assertions, is able and willing to supply the article to all who wish it at the lower rates, and have not the public, without reference to price, an interest in seeing that individuals shall not bind themselves, either directly or indirectly, not to engage in useful callings, and to perform useful service, except such engagements shall apply only to a limited territory, that is, to a territory so limited that the

court can see that the public have not, by the contract, been deprived of the benefit which it might receive from the talents and the service of the individual in the calling or business concerning which the contract is made? As the Supreme Court of the United States has said in Oregon Steam Navigation Co. v. Winsor, 20 Wall. 64, "There are two principal grounds upon which the doctrine is founded that a contract in restraint of trade is void as against public policy. One is, the injury to the public by being deprived of the restricted party's industry; the other is, the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and his family. * * * The country suffers the loss in both cases, and the party is deprived of his occupation, or is obliged to expatriate himself in order to follow it. A contract that is open to such grave objections is clearly against public policy."

It has from time immemorial been an industrial maxim that competition is the life of trade, while monopolies have always been odious. Combinations looking to the destruction of competition have, therefore, always been unfavorably regarded by the law, for it is manifest that without competition there can be no such thing as freedom of trade. As Chief Justice Cooley has said, "The advantages of unrestricted competition are apparent to the public in industrial life all about us, and while in some kinds of business this is sharp, yet selfishness is generally sufficiently active and sufficiently intelligent to prevent its becoming ruinous;" and as was said in Metzger v. Cleveland & Adams, 3 Ind. Law Mag. 42, "The maxim that competition is the life of trade, is not the language of the street alone; it is a proverb in law. * * * The law favors trade, and its first aim is to promote the public interest, and after that to preserve individual rights, and it will not permit any one to restrain a person from doing what the public welfare requires that he should do." That disasters sometimes result from competition, and injuries to the public sometimes grow therefrom, is no more a reason why the policy of the law in respect to competition should be abandoned, than are the unfortunate marriages which too frequently occur, and the

evils incident to the public as well as to individuals therefrom
a reason why the institution of marriage should be abolished,
or the law in respect to it radically changed.   Man is an im-
perfect being, therefore all things made and carried on by him
operate with more or less imperfection.   Whatever may have
been the rule centuries ago, it is now established that it is not
an offense for workmen to combine to raise the rate of wages,
but the question in this case is not whether a combination to
keep up prices is an offense, but whether the law so sanctions
agreements of this kind that it will enforce the fulfillment of
them by compelling the party who breaks the contract to pay
such penalty or such damages as the agreement provides.

If the landlords of a city should, by an agreement among
themselves, contract that they would not let any tenement or
room for housekeeping purposes, at a rental of less than $20
per month, and that whoever violated such contract should
pay to the association a penalty and be liable for all damages
which any party to the contract might sustain in consequence
of the violation thereof, would the courts enforce the collec-
tion of such penalty or damages because the allegation was
made and the preponderance of evidence showed that the rate
so fixed was a reasonable one ?   And still more, would the
court sustain an action brought for such penalty or such dam-
age if it appeared in evidence that any person in the city was
able and willing to furnish such tenement or rooms for a less
sum than that fixed by the association ?

Or, if the physicians of a city should agree that no one of
their number should visit any sick person without a fee of $2
paid in advance, and that whoever violated this compact should
pay a penalty of $100, or compensate the physician whose
custom or business he had taken away by such violation, would
not the courts refuse to enforce such a contract, notwithstand-
ing it might be of the opinion that the rate fixed and the
provision for advance payment was as *regards the physicians,*
a reasonable one ?   Would it not hold that the public had inter-
ests in reference to such matter ?   Or, if a trustee, entitled to
a reasonable compensation for his services and to his reasonable
expenditures, should report to the court that he had paid

More v. Bennett.

stenographers at the rate of $10 a day, would the court allow him that sum, in the face of the undisputed fact that he could have employed other stenographers, equally competent, for $5 a day? Has any court ever held that for one charged with a duty to another, it is reasonable to pay, either for commodities or labor, a larger sum than the article can readily be obtained for?

A large proportion of the cases in restraint of trade, to which our attention has been called, where such restraints, being partial and limited, have been held valid and enforceable, are cases in which a party selling out his stock of goods, machinery, tools, fixtures, lease or premises, has also sold therewith the good will of his business, and as a means of securing to the purchaser such good will, has covenanted that for a limited time, or within a limited distance, he would not carry on his former trade or business.

It was said by the vice-chancellor, in Leather Cloth Co. v. Lorsont, Law Rep. 9th Eq.: "All the cases in regard to restraints of trade, when they come to be examined, seem to establish this principle, that all restraints upon trade are bad, as being in violation of public policy, unless they are natural, and not unreasonable for the protection of the parties in dealing legally with some subject-matter of contract. The principle is this: Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill or talent by any contract that he enters into. On the other hand, public policy requires that when a man has, by skill or other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market, and in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case the same public policy that enables him to do that does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation, however restrictive it is, provided that restriction, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract."

Bronson, J., in Chappell v. Brockway, 21 Wend. 157, declares the rule to be that "It is not enough that there may be such a consideration as would be sufficient to uphold a contract in which the public had no interest. Whatever may be the pecuniary condition, it must appear, in addition, that there was some good reason for entering into the contract, and that it imposes no restraint upon one party which is not beneficial to the other." To the same effect is the opinion given in Ross v. Sadgbur, 21 Wend. 166, and also that in the leading case of Mitchell v. Reynolds, 1 P. Williams, 181.

There is another reason why this action can not be maintained. Any agreement, which, in its object or necessary operation, tends to diminish competition as to anything the public have for sale, or it is necessary that the public should use, is void. Public policy requires that the public shall obtain the things necessary for its use upon fair competition in a free and open market, or under such rules and regulations as the public laws may prescribe. The contract mentioned in this case, which it is said the plaintiffs had obtained, was one with the county of Cook; the service rendered was being performed for the public; the public authorities had no right to pay a larger sum than that for which they could get the work satisfactorily done, and any agreement depriving the county of its right to secure the performance of this work from any one competent to do it, was void, as opposed to public policy. The authorities upon this subject are numerous. Greenhood on Public Policy, page 177; Gulick v. Bailey, 10 N. J. Law, 102; Gibbs v. Smith, 115 Mass. 592; Atchison v. Mallon, 43 N. Y. 147; Woodworth v. Bennett, 43 N. Y. 273; People v. Lord, 6 Hun, 390; Engelman v. Skrainka, 14 Mo. App. 438; Hale v. Henderson, 4 Hump. (Tenn.) 198; Hannah v. Fife, 27 Mich. 173; Woodruff v. Berry, 40 Ark. 251; Noyes v. Day, 14 Vt. 384; King v. Winants, 71 N. C. 469.

We are of the opinion that the agreement set up in the declaration was contrary to public policy and therefore void. Parties who make such promises must depend upon the disposition of the promisors to keep the same; the law will not enforce such undertakings.

Why the appellees failed to file a brief in this case or suggest any reasons why this judgment should not be reversed, we do not know.

The judgment of the court below sustaining the demurrer to the declaration is affirmed.

*Judgment affirmed.*