54    233
114   ³108

## James D. Ulery v. The Chicago Live Stock Exchange.

1. LIBEL AND SLANDER—*Pleading—Innuendo Can Not Perform the Office of a Colloquium.*—An innuendo can not perform the office of a colloquium, nor can it extend the meaning of defamatory matter unless by reference to matter of inducement.

2. LIBEL—*What is, Under the Statute.*—The statute makes it unlawful to post or distribute any written notice with the malicious intent wrongfully and wickedly to injure the person, character, business, employment or property of another.

3. SAME—*Sufficiency of Declaration.*—The declaration averred that the defendant unlawfully and maliciously intended to injure and destroy the business of the plaintiff; such is not the language of the statute. Under it. the malicious intent must be "Wrongfully and wickedly to injure." A publication to be unlawful and actionable, must be within the terms of the statute.

4. SAME—*Not Actionable in Itself.*—A person with or without reason, may refuse to trade with another; so may ten or fifty persons refuse. An individual may advise his neighbor or friend not to trade with another neighbor; he may even command when the command amounts only to

earnest advice. It is not an unlawful interference with the trade of another to advise people to deal with his competitor, or to decline to do business with him, nor is it unlawful to combine to raise the rate of wages.

5. SAME—*A Publication Not Actionable per se.*—The following publication is not libelous *per se.*

"THE CHICAGO LIVE STOCK EXCHANGE,
OFFICE OF SECRETARY.

To MEMBERS OF THE EXCHANGE :

You are hereby directed not to employ Mr. J. D. U——, in the live stock commission business, or to transact any business with him at the Union Stock Yards of Chicago, Illinois, until you are notified that the said U——, has settled with Messrs. K—— & S., for twenty head of cattle, bought of them on the 25th of January, A. D. 1893.

THE BOARD OF DIRECTORS OF THE
CHICAGO LIVE STOCK EXCHANGE,
By C. W. B——, Secretary."

**Memorandum.**—Action for libel. Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the March term, 1894, and affirmed. Opinion filed April 19, 1894.

APPELLANT'S BRIEF, LEMMA & COPE, ATTORNEYS.

Words not actionable in themselves become so when published of one engaged in a particular calling or profession, and proof of special damage is unnecessary. Clifford v. Cochrane, 10 Brad. 574; Brown v. Vanaman, 55 N. W. Rep. 183; Nelson v. Brochenius, 52 Ill. 236; Tremmer v. Hiscock, 27 Hun, 364; McDonald v. Lord, 27 Ill. App. 111; Blumhardt v. Bohr, 17 Atl. Rep. 266, 70 Md. 328.

It is not necessary to aver special damages, if any injurious imputation be made affecting plaintiff in his office, profession or business, nor if the slander be propagated by printing, writing, picture or effigy. Starkie on Libel and Slander, 105; Gauvreau v. Superior Rub. Co., 62 Wis. 403; Newell on Libel and Slander, 849.

The declaration in this case avers special damages in this language: "Insomuch that the members of said Exchange" and others have refused and do still refuse to have anything to do with plaintiff in said business.

In an action of slander by an innkeeper a proof of a gen-

eral loss of custom is sufficient to sustain the action without naming particular customers. Newell on Libel and Slander, 780; Starkie on Libel and Slander, 426; Missouri Pac. Ry. Co. v. Richmond, 11 S. W. 555, 73 Tex. 568; Weiss v. Whittemore, 28 Mich. 366.

As to whether the publication constitutes a libel, see Newell on Libel and Slander, Chap. 4, page 42; McDonald v. Lord, 27 Ill. App.; Hays v. Mather, 15 App. 30; Gault v. Babbit, 1 Brad. 130; Lapham v. Noble, 54 Fed. 108; State v. Armstrong, Mo. 16 S. W. 604; Truth Pub. Co. v. Reed, 13 Ky. L. R. 323; Arrow Steamship Co. v. Bennett, 25 N. Y. S. 1029; Sec. 177 Crim. Code of Ill. "Libel."

It is for the court to say whether a publication is reasonably susceptible of the meaning ascribed to it in the innuendo, and for the jury to say if such is the true construction. Hays v. Mather, 15 Ill. App. 30; Mitchell v. Sharon, 57 Fed. Rep. 424.

APPELLEE'S BRIEF, PECK, MILLER & STARR, ATTORNEYS.

Where a charge arises out of a written instrument, the instrument must be set out in the declaration; and the defendant has the right to admit all the facts charged, if he chooses, and to have the judgment of the court as to whether such facts amount to a cause of action. The defendant is not bound to put the question as a mixed question of law and fact to the jury; he has a right to put it as a question of law to the court. 2 Addison on Torts, 4th Eng. Ed. 923; Wright v. Clements, 3 B. & A. 509; Wood v. Brown, 6 Taunt. 169; Odgers on Libel and Slander, 536–7; Gunning v. Appleton, 58 How. Pr. 472.

A demurrer does not admit the charge of malicious intent. Mitchell v. Sharon, 51 Fed. Rep. 424; Gunning v. Appleton, 58 How. Pr. 472.

The office of an innuendo is not to enlarge the meaning of the words employed in an alleged libel, but merely to point out their application to facts previously averred. The words are to be construed in their ordinary, plain and popular sense. Blagg v. Stewart, 10 Ad. & E. 899; Bradley v.

Cramer, 59 Wis. 312, 313; Capitol & C. B. L. v. Henty, L. R. 7 H. L. 744; Fleischmann v. Bennett, 87 N. Y. 238; Van Vechten v. Hopkins, 5 Johns. 211; Newell on Libel and Slander, 619, 620.

The notice was not libelous *per se.* Miller v. David, L. R. 9 C. P. 1187; Sherry v. Perkins, 147 Mass. 212.

Statements necessary to protect the defendants are privileged. Odgers on Libel and Slander, 199, 229; Newell on Libel and Slander, 388; 2 Addison on Torts, 4th Eng. Ed., 931; Blackham v. Pugh, 2 C. B. R. 611; Lawler v. Anglo-Egyptian Cotton Co., L. R. Q. B. 262; Somerville v. Hawkins, 10 C. B. 583; Jenoure v. Delmege, L. R. 1891, App. C. 73.

If a communication was warranted by any reasonable occasion or exigency and honestly made, such communication is privileged, for the common convenience and welfare of society; and the law has not restricted such privilege within any narrow limits. 2 Addison on Torts, 4 Eng. Ed. 931.

It is also well settled that where the alleged libel was in the nature of a privileged communication, the plaintiff must aver in the declaration that the communication was both false and groundless. Newell on Libel and Slander, 391; Thorn v. Blanchard, 5 Johns. 529; Vanderzee v. McGregor, 12 Wend. 545, note; O'Donaghue v. McGovern, 23 Wend. 26; Howard v. Thompson, 21 Wend. 319-29; 2 Greenleaf on Evidence, Sec. 410, note; Born v. Rosenow, 54 N. W. Rep. 1089; Young v. Richardson, 4 Brad. 364.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This was an action for an alleged libel, as well as for an injury to the business of appellant, said to have been maliciously inflicted.

The declaration, after setting forth the existence and business of appellee as a corporation, and that appellant was a live stock broker, and was in good credit and repute as such broker, and enjoying an income of $5,000 per annum therefrom, charges that appellee, for the purpose of injuring

Ulery v. Chicago Live Stock Exchange.

him in his said business, and to prevent others from dealing with him, published of him the following:

> "THE CHICAGO LIVE STOCK EXCHANGE, }
> OFFICE OF SECRETARY.

To Members of the Exchange:

You are hereby directed not to employ Mr. J. D. Ulery (meaning plaintiff) in the live stock commission business, or to transact any business with him at the Union Stock Yards of Chicago, Illinois, until you are notified that the said Ulery has settled with Messrs. Keenan & Sons for twenty head of cattle, bought of them on the 25th of January, A. D. 1893.

> THE BOARD OF DIRECTORS OF THE
> CHICAGO LIVE STOCK EXCHANGE,
> By C. W. BAKER, Secretary."

Meaning, etc., by said publication to cause it to be understood and to falsely charge that the plaintiff was unworthy of trust and confidence.

" By means whereof the plaintiff has been greatly injured in his good name and credit, and fallen into great discredit; insomuch that the members of said exchange, and others, have refused, and do still refuse to buy or sell or have anything to do with plaintiff in his said business."

A second count, after setting forth the large amount of business done by members of the Live Stock Exchange, amounting to more than $30,000,000 per annum, and that it was a corporation conducted for the purpose of enforcing rules regulating the buying and selling of live stock at the yards where it is located, and that its power was such that no person did or could pursue the business of selling live stock, who was not a member of said corporation, goes on as follows:

" By means of a combination of a large number of persons engaged in the live stock commission business in said market, in a corporate body, under the conditions and for the purposes aforesaid, the said corporation possessed the power of controlling the said business and preventing the sale of the stock by said commission merchants and by others, to any person whom the said defendant might elect

to exclude from dealing in said market, and to prevent any such person from receiving employment in connection with said business; and on, to wit, the 20th day of June, 1893, the said defendant, unlawfully and maliciously intending to injure and destroy the said business of plaintiff, and prevent him from buying and selling live stock in said market, and from receiving employment from others, did cause to be posted at said stock yards, in a public place on the bulletin board commonly used by said defendant in the announcement of its orders and notices, in a building occupied by said defendant as Live Stock Exchange Building, the following order:" (As set forth in first count.)

"And the defendant caused said order to remain so posted and displayed from said time until, to wit, the 10th day of September, 1893; and the same yet remains so posted and in full force, as the order and command of said defendant; and the said order was, during said time, accepted and observed and is still accepted and observed by the members of said corporation; and in consequence thereof, the plaintiff lost his said employment as salesman for said Drum, Flado & Company; the members of said corporation, during said time, refused and continue to refuse to deal with plaintiff in any manner whatever, or to in any manner employ him in any matter connected with said business. And in consequence of the premises, the plaintiff has been, and is wholly unable to continue in said business, and is deprived of all employment in said stock yards; all of which is to the damage of said plaintiff in the sum of fifty thousand dollars ($50,000), and therefore he brings suit.

A general demurrer to the declaration was sustained.

In respect to the publication complained of it is to be noticed:

First, that it is not libelous *per se.* Sherry v. Perkins, 147 Mass. 212.

Second, that if the intimation contained therein, that the plaintiff has not settled for certain cattle bought be true, it does not follow that the plaintiff has done any unworthy act, or anything that should cause him, or would be likely to cause him, loss of custom or credit.

Ulery v. Chicago Live Stock Exchange.

For aught that appears, he may have had the best of reasons for not settling for such cattle.

Third, the declaration fails to allege that anything said or intimated in the writing was in any wise untrue.

Fourth, there is in the declaration neither statement, colloquium or innuendo by which it is made to appear that the plaintiff had bought any cattle of Messrs. Keenan & Sons, or had any occasion for settling with them for anything, or that any person in consequence of the publication had been led to believe that he had failed to settle with Messrs. Keenan & Sons.

The charge of the declaration in this regard is that the defendant meant by the publication to falsely charge that he (the plaintiff) in his said business was unworthy of trust and confidence.

This is, for a pleading, a most obvious enlargement of the necessary as well as the natural meaning of the language actually used.

An innuendo can not perform the office of a colloquium, nor can it extend the meaning of defamatory matter unless by reference to matter of inducement. Townsend on Slander & Libel, 580, 581; Blagg v. Stewart, 10 Ad. & E. 899; Bradley v. Cramer, 59 Wis. 312, 313; Capitol & C. B. L. v. Henty, L. R. 7 H. L. 744; Fleischmann v. Bennett, 87 N. Y. 238; Van Vechten v. Hopkins, 5 Johns. 211.

Considered as an action for libel, the declaration presents no case.

Treating the cause as an action for an injury maliciously inflicted, is the declaration sufficient?

Under this view, the act of the defendant is that of directing its members not to trade with the plaintiff.

The second count is said to be sufficient under the statute of 1874, Sec. 46 of the Criminal Code.

That statute makes it unlawful to post or distribute any written notice with the malicious intent, *wrongfully and wickedly*, to injure the person, character, business or employment or property of another.

The declaration avers that the defendant unlawfully and

maliciously intended to injure and destroy the business of the plaintiff; such is not the language of the statute. Under it the malicious intent must be "wrongfully and wickedly to injure."

If the publication, but for the statute, was lawful, then the publication, to be unlawful and actionable, must be within the terms of the statute.

It is urged that the defendant possessed the means of enforcing obedience to its order, and that therefore its command not to deal with the plaintiff furnishes a basis for an action.

Argumentatively, it is set forth that the defendant possessed such power, but no facts showing such argument to be well founded, are alleged, and we are not aware of any such power.

It may be that under its rules a disobedience of the order by one of the members of the exchange would have rendered him liable to expulsion; no such rule is set forth, and we can not presume that there is any. Whether such a rule could be enforced is a question we are not called upon to discuss. So far as appears, if the members of the exchange have obeyed the order, their action has been purely voluntary.

The act of the defendant is not shown to have been unlawful, or to have been done in an unlawful manner.

The plaintiff's action is for an injury resulting from the doing of a lawful act in a lawful manner.

A person, with or without reason, may refuse to trade with another; so may ten or fifty persons refuse.

An individual may advise his neighbor or friend not to trade with another neighbor; he may even command, when the command amounts only to earnest advice.

The act here complained of is not a nuisance as were the acts enjoined in Sherry v. Perkins, 147 Mass. 212. Nor was the defendant's act riotous, tumultuous, or one tending to a breach of the peace; nor was it a conspiracy to do an unlawful act.

It is not an unlawful interference with the trade of

another to advise people to deal with his competitor, or to decline to do business with him. Nor is it now unlawful to combine to raise the rate of wages. More v. Bennett, 41 Ill. App. 164; Heywood v. Tillson, 75 Me. 231; Payne v. Western Ry., 13 Lea 81 (Tenn.) 507; Mogul Steamship Co. v. McGregor, 21 Q. B. Div. 544; 23 Q. B. Div. 598; L. R. App. Cas., 1892, p. 25; Bohn Mfg. Co. v. Hollis, 55 N. W. Rep. 1119; Carew v. Rutherford, 106 Mass. 1.

The case of Walker v. Cronin, 107 Mass. 555, upon which appellant relies, was an action for enticing away servants; that has always been a sufficient cause of action. Wood on Master and Servant, Sec. 230.

The fact that such advice is given with a bad or malicious motive, does not render it unlawful or actionable. The law does not ordinarily consider the motives by which people are actuated to lawful acts, while motive plays a very important part when unlawful proceedings are under consideration.

So far as appears from the declaration filed in this case, the defendant has done nothing unlawful; its conduct may have resulted in injury to the plaintiff, but is not for that reason alone actionable. The judgment of the Superior Court is affirmed.

MR. JUSTICE GARY.

The declaration implies that the defendants enforced among its members, rules and regulations intended to regulate business upon business principles, requiring integrity and punctuality, and that the plaintiff was charged with the want of one or the other of those qualities.

To show a cause of action his declaration should negative all ground for imputing blame to him. To maintain an action for a wrong done to him, he must show that such wrong was done.

If he had bought twenty head of cattle of Keenan & Sons, and did not pay for them, the members of the department ought to stop dealing with him, and the defendant was right in notifying its members of the facts and their duty.