REYNOLDS v. PLUMBERS' MATERIAL PROTECTIVE ASS'N.

(Supreme Court, Trial Term, Monroe County. February, 1900.)

1. TRADE UNIONS—STATUTE—VALIDITY—PUBLIC POLICY.
    Laws 1886, c. 333, authorizing the organization of corporations or associations for the purpose of fostering trade and commerce, or the interest of those whose business is the erection of buildings or the furnishing of materials, and to diffuse accurate and reliable information among its members as to the standing of merchants and builders, is not void as against public policy.

2. LIBEL AND SLANDER—PRIVILEGED COMMUNICATIONS—MALICE.
    Defendant was an association of merchants duly incorporated for the purpose of furnishing information to its members of the standing and character of their customers. Plaintiff refused to pay his account to one

of the members of the association, or submit it to arbitration, as provided
by the by-laws, and his name was entered on the books of defendant,
and each member of the association notified, which prohibited them from
selling goods to plaintiff, except for cash, until his account was settled.
*Held*, that the communication was privileged, and, in the absence of ex-
press malice, was not libelous.

3. ARBITRATION AND AWARD—ARBITRATION OF ACCOUNTS.

Under Code Civ. Proc. § 2366, authorizing the submission of contro-
versies to arbitration, the rule of an association of merchants duly incor-
porated for the purpose of furnishing information to its members of the
character and standing of their customers, which provides that, when a
debtor refuses to settle his account, or submit it to arbitration, the other
members will be so informed, and will sell to him for cash only, is not
an unlawful attempt to compel arbitration of such accounts.

Action by James Reynolds against the Plumbers' Material Pro-
tective Association for libel. Judgment for defendant.

Porter M. French, for plaintiff.

Albert B. Boardman, for defendant.

DAVY, J. I am inclined to think that the motion for a nonsuit
must be granted, for the reason that the alleged libelous article
is privileged. The plaintiff, in the year 1896, purchased a quantity
of plumbing materials of one of the members of the defendant
corporation. A controversy arose between these parties as to the
amount plaintiff was owing for the goods purchased. The by-laws
of the association provide that, if the debtor does not settle the
claim with the member, or present to the corporation some reason
for not doing so, or submit the controversy to arbitration, the
corporation, then, through its officers, should send to each of its
members a formal statement that the alleged debtor's name has
been entered on the books of the corporation, and that the members,
by the terms of its by-laws, are prohibited from selling goods to
such debtor, except for cash before delivery, until he shall have
settled. The plaintiff having refused to pay his bill or submit the
controversy to arbitration, the defendant entered his name on the
books of the association, and notified the members of that fact.
The plaintiff contends that the publication is libelous, and he
brings this action to recover damages therefor.

It appears from the evidence that the defendant was legally
organized under chapter 333 of the Laws of 1886, which provides
that:

"At any time hereafter any twelve or more persons who may desire to
form a corporation commonly called board of trade or exchange, or a builder's
exchange or association, for the purpose of fostering trade and commerce, or
the interests of those whose business is the erection of buildings, or the fur-
nishing or materials used in the erection of buildings, to reform abuses in
trade or business, to secure freedom from unjust or unlawful exactions, to dif-
fuse accurate and reliable information among its members as to the standing
of merchants and builders, and other matters, to produce uniformity and cer-
tainty in the customs and usages of trade and commerce, and of those en-
gaged in the business of erecting buildings or the furnishing of materials
therefor, to settle differences between its members, and to promote a more
enlarged and friendly intercourse between merchants and business men, may
make, sign and acknowledge before some officer competent to take the ac-
knowledgment of deeds, and file in the clerk's office of the county where the

principal office of such corporation is to be located, and a duplicate thereof in the office of the secretary of state, a certificate in writing, in which shall be stated the name of the corporation, and the object for which it shall be formed, the amount of its capital stock, if any, the number of shares of which said stock shall consist, the time of its existence, not to exceed fifty years, the number of trustees, and their names, and the name of the city or town and county in which the principal office of such corporation is to be located."

It is urged by the learned counsel for the plaintiff that the act is unconstitutional and void, for the reason that it is in restraint of trade and against public policy. It will be seen, from the context of the act, that it is not a local, but a general, law. Perkins v. Heert, 158 N. Y. 310, 53 N. E. 18. It provides, among other things, for the protection of those whose business is the furnishing of materials used in erecting buildings, and the giving of reliable information among its members as to the standing of merchants and builders and other matters, and to produce uniformity and certainty in the customs and usages of trade. It has frequently been held that a general law providing the mode in which corporations may be organized for business purposes will warrant the organization of a corporation for any purpose which is within the language or import of the act. The statute, having vested certain rights in the defendant, gave it authority to make all reasonable and necessary by-laws for the proper government and management of its business. It is customary, in all incorporated societies, to adopt by-laws which set forth the object of the society, the qualifications for membership, and to contain such other rules and regulations as may be necessary for the management of its affairs. A business, such as that in which the defendant is engaged, if properly conducted, and giving only correct information to its members, is of the highest importance to merchants and business men. A business cannot be characterized as unworthy or unlawful which aims only to give correct information to those who are members of the corporation as to the financial standing of business men and merchants who have dealt with any of its members. The alleged communication related to the business transactions between the plaintiff and one of the defendant's members. It was important as bearing upon the question whether, as a business man, the plaintiff was entitled to credit and confidence, which every member of the defendant's organization had a right to know. Merchants have an interest in knowing and have a right to know the character and financial standing of those who deal or propose to deal with them, and of those upon whose standing and responsibility they, in the course of their business, have occasion to rely. They may therefore make inquiries of merchants or other persons who may have information as to the character and financial standing of such persons, and, if merchants or other persons in good faith communicate the information which they have, the communication is privileged. It is a rule well settled that confidential communications respecting the character and financial standing of another, made to one who is interested in the communication or desires the information as a guide to himself in the conduct of his own affairs

and dealings with such other, are privileged, and are not actionable unless there be proof of express malice. Ormsby v. Douglass, 37 N. Y. 477. It seems to me that the communication in question belongs to that class which is privileged because it relates to matters in which the members of the association were interested, and under the defendant's by-laws it was incumbent on its officers to communicate to the members the names of those persons who refused to pay their debts owing any of its members, in order to protect other members from making contracts with irresponsible parties. To entitle the plaintiff to recover, therefore, he must show that the publication was both false and malicious. The evidence fails to establish either of these two propositions. The fact that members of the organization received the communication who were not engaged in selling the same kind of goods which the plaintiff used in his business did not take away the privilege. The business of the defendant could not be conducted so as to protect its members without the liberty of speaking and writing to them upon all matters pertaining to the business of the association. The evidence establishes no publication at large. The communication was sent only to the members of the association by one of its officers, having the power and on whom rested the duty of sending such communication. The rule in this class of cases is, where words imputing misconduct to another are spoken or written by one having a duty to perform, and the words are spoken in good faith, and in the belief that it comes within the discharge of that duty, or where they are spoken or written in good faith to those who have an interest in the communication, and a right to know and act upon the facts stated, no presumption of malice from the publication can arise, and therefore no action can be maintained in such cases without proof of express malice.

It was held in Lewis v. Chapman, 16 N. Y. 369, that when a communication is bona fide in answer to inquiries from one having an interest in the information sought, or when the relation between the parties by whom and to whom the communication is made is such as to render it reasonable and proper that the information should be given, it will be regarded as privileged. The relation of the parties should be such as to furnish reasonable ground for supposing an innocent motive for giving the information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.

In the case of Sunderlin v. Bradstreet, 46 N. Y. 188, referred to by the learned counsel for the plaintiff, it appeared that the defendants, of their own volition and for their own profit, collected information concerning the condition of traders, and this they communicated to subscribers not interested in the matter; and the court reiterated the rule laid down in Lewis v. Chapman, supra, which held that, owing to the want of interest in the person addressed, the communication was not privileged.

In Byam v. Collins, 111 N. Y. 151, 19 N. E. 75, Judge Earl, in speaking of privileged communications, said:

"It has been found difficult to frame this rule in any language that will furnish a plain guide in all cases. It is easy enough to apply the rule in cases where both parties, the one making and the one receiving the communication, are interested in it, or where the parties are related, or where it is made upon request to a party who has an interest in receiving it, or where the party making it has an interest to subserve, or where the party making it is under a legal duty to make it." Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342.

A pamphlet containing the names of discharged employés of a railroad company, with reasons for their discharge, and placed by the railroad company in the hands of persons whose duty it is to employ servants on behalf of the company, is a privileged communication. But care must be taken to restrict the communication to the proper persons, and also to prevent undue publicity. Bacon v. Railroad Co., 66 Mich. 166, 33 N. W. 181; Lawless v. Oil Co., L. R. 4 Q. B. 260.

In Redgate v. Roush, 59 Pac. 1050, recently decided by the supreme court of Kansas, it was held that:

"Where the officers of a church, upon inquiry, find that their pastor is unworthy and unfit for his office, and thereupon, in the performance of what they honestly believe to be their duty towards other members and churches of the same denomination, publish, in good faith, in the church papers, the result of their inquiries, and there is a reasonable occasion for such publication, it will be deemed to be privileged and protected under the law. Where a publication appears to have been made in good faith, and for the members of the denomination alone, the fact that it incidentally may have been brought to the attention of others than members of the church will not take away its privileged character. In such a case, and where the plaintiff seeks damages, it devolves upon him to establish actual malice, and, where his own testimony disproves malice, the court is justified in taking the case from the jury upon a demurrer to the evidence."

The communication in question is clearly within the principle of the rule stated. It was made by the officers of the defendant who, under the by-laws, were obligated to its members to make the communication. The privilege, therefore, protects the defendant from liability on that ground until the plaintiff has overcome the presumption of good faith by proof of a malicious purpose to defame the character and credit of the plaintiff in his business under cover of the privilege. The plaintiff must be able to point to some evidence that would warrant the jury in imputing this guilty motive before the court would be justified in sending the case to the jury. The evidence discloses no motive whatever on the part of the defendant for any charge against the plaintiff which it knew to be false or did not know to be true. It does not disclose the slightest ground for imputing bad faith to the defendant. The question of malice, however, is wholly removed from the case, for the reason that the plaintiff has stipulated that there was no malice on the part of the defendant in publishing the alleged libelous communication. The members of this corporation are composed of merchants, tradesmen, and others, organized for the promotion of trade and for the protection of the individual members from losses in their business transactions with each other and with the community at large. The information obtained by the defendant is for the benefit of its members, which is kept strictly private from all per-

sons who are not members of the organization. It must be conceded that the extraordinary development and growth of commercial enterprise and trade within the past few years, and the distribution of our vast products of industry in every part of the world, have made it necessary for merchants and business men to organize for the protection of each other in their business against irresponsible parties. It is true that the defendant would have no right to form a combination for the purpose of injuring another, but it is not unlawful for its members to combine for the protection of each other from irresponsible parties. The exercise of such a right cannot be a legal wrong.

It was held in the house of lords in Allen v. Flood [1898] App. Cas. 1, that an act lawful in itself is not converted by malicious or bad motive into an unlawful act, so as to make the doer of the act liable to a civil action. No one can claim as a matter of right the privilege of purchasing a commodity of any particular person or number of persons, and the members of this corporation may lawfully refuse to sell to whom they choose. Schulten v. Brewing Co., 96 Ky. 224, 28 S. W. 504. If the plaintiff was indebted to one of the members of the association, and refused to pay him, he had a right at any time, not being a public agent, and owing no common duty to the public, to sever the relationship of creditor and debtor, and refuse to deal with him unless he paid cash. Merchants have a right to deal with whoever they choose. They have a right to sell their goods on credit, or to demand a cash payment; and it is not unlawful for any number of persons to organize under the statute to protect themselves in trade, and they may agree not to sell their goods on credit, and such an act would not be in restraint of trade or against public policy.

Judge Cooley, in his work on Torts (page 278, Ed. 1880), says:

"It is a part of every man's civil rights that he be at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason or is the result of whim, caprice, prejudice, or malice. With his reasons neither the public nor any third persons have any legal concern."

And again, at page 638, he says:

"The exercise by one of his legal right cannot be a legal wrong to another. Whatever one has a right to do, another can have no right to complain of. As long as a man keeps within the law, by doing no act which violates it, we must leave his motives to Him who searches the heart."

It seems to me that the plaintiff cannot successfully contend that there was any coercion brought to bear on the members of the corporation to prevent them from trading with the plaintiff. If he refused to submit to arbitration, he was simply required to pay cash for whatever goods he purchased. If the members received the notice, they would be at liberty to trade with the plaintiff, or not, as they saw fit. By the provisions of the by-laws, however, if they traded with him, and gave him credit for goods purchased, they were liable to be expelled from the organization; but this simply meant to cease to be members. It was wholly a matter of their own free choice whether they preferred to trade with the plaintiff on credit or continue to be members of the association.

Injury, in its legal sense, means damage resulting from an unlawful act. Associations may be formed, the object of which is to adopt measures that may tend to diminish the gains and profits of another, and yet not be unlawful.

In Steamship Co. v. McGregor, 21 Q. B. Div. 553, Lord Coleridge, C. J., says:

"It must be remembered that all trade is, and must be, in a sense selfish. Trade not being infinite,—nay, the trade of a particular place or district being possibly very limited,—what one man gains another loses. In the hand to hand war of commerce, as in the conflicts of public life, whether at the bar, in parliament, in medicine, in engineering, men fight on without much thought of others, except a desire to excel or to defeat them."

In Ulery v. Live-Stock Exch., 54 Ill. App. 233, which was an action for libel, the court held that a person, with or without reason, may refuse to trade with another. So may 10 or 50 persons refuse. An individual may advise his neighbor or friend not to trade with another neighbor, or may even command, when the command amounts only to an earnest advice. It is not an unlawful interference with the trade of another to advise people to deal with his competitor, or decline to do business with him. It was held that the following article was not libelous per se:

"The Chicago Live-Stock Exchange, Office of Secretary.

"To the Members of the Exchange: You are hereby directed not to employ Mr. J. D. Ulery in the live-stock commission business, or to transact any business with him at the Union Stock Yards of Chicago, until you are notified that the said Ulery has settled with Messrs. Keenan & Sons for twenty head of cattle bought of them on the 25th of January, A. D. 1893.

"The Board of Directors of the Chicago Live-Stock Exchange,
"By C. W. Baker, Secretary."

The court said:

"The act here complained of is not a nuisance, * * * nor was the defendant's act riotous, tumultuous, or one tending to a breach of the peace, nor was it a conspiracy to do an unlawful act. It is not an unlawful interference with the trade of another to advise people to deal with his competitor, or to decline to do business with him. * * * Payne v. Railroad Co., 13 Lea, 507; Steamship Co. v. McGregor, 21 Q. B. Div. 544, 23 Q. B. Div. 598, [1892] App. Cas. 25."

See Anderson v. U. S., 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300; Lough v. Outerbridge, 143 N. Y. 283, 38 N. E. 292.

While motive plays a very important part when unlawful proceedings are under consideration, yet the law does not ordinarily consider the motives by which people are actuated in doing lawful acts. So far as appears from the evidence in this case, the defendant has kept within the requirements of the statute and has done no illegal act.

Cook, in his recent work on Trade and Labor Combinations (section 9), says:

"No authority is needed to sustain the proposition that there is nothing inherently or necessarily illegal either in refusing to deal or to continue to deal, or in inducing a person not to deal or to continue to deal, with another. * * * There is nothing inherently or necessarily illegal in inducing a person not to patronize this or that doctor or grocer. Such inducement or advice is a part of the very web and woof of ordinary neighborly and social intercourse."

The learned counsel for the plaintiff also contends that there was an attempt to compel the plaintiff to submit the controversy to arbitration, which was an unlawful act. There is no rule of law against parties agreeing to submit their controversies to arbitration of their own creation. There is no injustice in this rule, and there was no attempt to create a tribunal contrary to law. Section 2366 of the Code of Civil Procedure expressly provides for the submission of controversies to arbitration. The plaintiff was under no legal obligation to submit to arbitration, and the only condition imposed by the company, if he refused to arbitrate, was that thereafter he must pay cash for all goods purchased from the individual members of the organization. This rule was not in restraint of trade nor against public policy. The plaintiff was at liberty to deal with other merchants, and to purchase goods of them, either for cash or upon credit. When parties submit their controversies to arbitration, especially under the provisions of the Code, it tends to bring about a speedy settlement of such controversies. It is a well-known fact that the accumulated causes on the court calendars in many of our large cities are so numerous that it is a year or two after a cause is placed upon the calendar before it can be tried. This delay is very unsatisfactory to those who seek to enforce the collection of their claims in the courts. Arbitration, therefore, is a more speedy way of settling controversies between merchants.

In the Massachusetts case relied upon by the learned counsel for the plaintiff (Hartnett v. Association, 169 Mass. 229, 47 N. E. 1002), the defendant was organized under a statute which gave it no power to prosecute the business of collecting debts due to persons who were members of the corporation, and of protecting them from selling upon credit to irresponsible customers. The court held that such a corporation would be a business enterprise, and, to be chartered, must have a capital stock, and must comply with the provisions of Pub. St. Mass. c. 106, instead of Id. c. 115, in order to obtain a legal existence and have corporate rights and privileges, and that the charter under which the defendant was organized conferred upon it no such rights.

Having reached the conclusion that the act is not void as against public policy, and that the communication is privileged, I must, therefore, grant the motion for a nonsuit.