## TRAPP v. DU BOIS.

(Supreme Court, Appellate Division, Second Department. November 14, 1902.)

1. LIBEL—LETTER—EXPRESS MALICE—EVIDENCE.

    A dispute arose between plaintiff, a plumber, and defendant, a dealer· in plumbers' supplies, as to whether plaintiff owed defendant a $11 item in a bill for $111. Defendant knew that plaintiff refused to pay for the item because he thought he was not legally responsible for it, though he· paid the rest of the bill. Plaintiff suggested that defendant sue for it. Defendant wrote to the Plumbers' Material Protective Association, who· blacklisted plaintiff. It .was the custom of the association, under its by-laws, to blacklist plumbers who "unjustly failed to meet their obligations." *Held*, that there was evidence to ·warrant a finding of express malice.

2. SAME—ACT OF SERVANT—LIABILITY OF MASTER.

    Where a servant, in the course of his employment, causes a libelous· letter to be written, the master is liable.

Appeal from trial term, Kings county.

Action by Joseph A. Trapp against Frederick N. Du Bois. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,. WOODWARD, and HIRSCHBERG, JJ.

Edw. C. Perkins (Frankland Briggs, on the brief), for appellant. John B. Shanahan, for respondent.

¶ 2. See Master and Servant, vol. 34, Cent. Dig. § 1230.

GOODRICH, P. J. The action is for libel published in a letter dated March 19, 1900, written by the defendant to the secretary of the Plumbers' Material Protective Association. The plaintiff recovered a verdict for $200, and from the judgment entered thereon the defendant appeals.

Plaintiff was a plumber and gas fitter, having a place of business in Brooklyn. He had been dealing for several years with the defendant, who was a dealer in plumbers' materials, and contracted through Coleman, one of defendant's employés, to purchase from the defendant, for $100, a porcelain bath tub, which was to be delivered at some residence on Clinton street, where the plaintiff was doing plumbing work. The plaintiff testified that the tub was to be placed on the floor of the bathroom. Coleman testified that there was no agreement to put the tub in the bathroom; that it was to be delivered at the house at $100, with an addition of $5 for the crate, the price of which would be credited upon its return. The tub was delivered into the area way of the house, and the plaintiff required its delivery in the bathroom. It was so delivered, and the defendant sent the plaintiff a bill for $111, which included the crate and extra labor for putting the tub in the bathroom. On presentation of the bill, the plaintiff paid $100, and refused to pay the $11. Out of these facts grew a controversy as to the liability of the plaintiff to pay the $11. Plaintiff suggested that defendant should sue him for the amount. On March 5, 1900, the defendant wrote the plaintiff that unless the bill was settled the matter would be referred to the Plumbers' Material Protective Association. This letter was not answered. Defendant thereupon informed the association of plaintiff's failure to settle the bill, and shortly after plaintiff received from the association, under a letter heading showing its officers and membership, the following letter:

"This association embraces the Manufacturers of and Dealers in Plumbers', Gas and Steam Fitters' Materials, Stoves and Heating Apparatus, Roofers' and Tinners' Materials, Pumps and Pumping Engines, Tanks, and all Materials used in lines kindred thereto. * * *

"New York, March 20, 1900.

"Mr. Joseph A. Trapp, Brooklyn, N. Y.—Dear Sir: As you have failed to settle the claim of F. N. Du Bois for the sum of $11.00, it now becomes my duty to inform you, on behalf of this association, that unless you settle within ten days from this date, with the above-named creditor, the members of this association will be notified of the same, and, in consequence thereof, you may be unable to purchase any goods from any of them except for cash before delivery. Should you have any reason, of any nature whatsoever, why such notice should not be given, it will be to the interest of all concerned if you present the same to this association, in writing, immediately on receipt of this, as it is not the intention of this association to inconvenience an honest debtor. Inattention to this, however, will bring about the consequences above indicated, which I trust you will avoid.

"Yours truly,                               Edw. W. Lowe, Secretary,
                                              "Per C. B. Lowe."

The plaintiff did not answer this letter, and later he was blacklisted, or, as the defendant and the association euphemistically describe it, he was put on the "cash before delivery list" of the association.

The answer alleges that the association was formed "for the purpose of fostering trade and commerce in plumbers' materials and kindred lines of business, to protect it from unjust and unlawful exactions, to reform abuses in trade, to diffuse accurate and reliable information among its members as to the standing of merchants, and other matters, and for other like purposes," and that the by-laws provided that it should be the duty of members "to sell only for cash paid before delivery to customers who might have unjustly failed to meet their trade contracts and obligations, so long as such failure should continue," and that the secretary was required to notify all the members of all delinquencies, and that in consequence, and at the request of the defendant, all the members were notified that the plaintiff was blacklisted. The defendant claimed that his letter was a privileged communication, and the court so charged, saying that if the defendant believed the bill was a just bill and if he, in good faith, put the matter in the hands of the association, he was not responsible; and this view is sustained by authority. Reynolds v. Association, 30 Misc. Rep. 709, 63 N. Y. Supp. 303, where the subject was fully considered. A motion for a new trial was denied. 53 App. Div. 650, 66 N. Y. Supp. 1142.

The court also charged that the plaintiff must prove not only that the bill was an unjust bill, but that the defendant had reason to believe it was unjust,—in other words, that the plaintiff must prove express malice. The evidence was sufficient to justify a finding of express malice. The defendant knew that the plaintiff had declined to pay the bill solely on the ground that he was not legally responsible for it, that he had suggested the bringing of a suit to test the question of his liability, and that he was solvent. One of the by-laws of the association provided that it should be the duty of the members to send information to the secretary "whenever any delinquency or act comes to their knowledge which jeopardizes the credit of any party in the trade." The refusal of the plaintiff to pay an item in the bill for which he denied any liability is not such an act or delinquency as to jeopardize his credit. The letter of the defendant was within neither the letter nor the spirit of the by-law. Defendant did not disclose to the association the facts of the controversy as to liability and the solvency of plaintiff. He left it to be inferred that the plaintiff was pecuniarily unable to pay a trifling bill of $11. Plaintiff's silence under such circumstances, and his failure to answer the communication of the association of which he was not a member, were entirely justifiable. The defendant had neither right nor reason to address him the letter of March 20th. Indeed, it may well be said that it was an impudent interference with the plaintiff's business, and that it was promoted and caused by the defendant's communication to the association. Taken in connection with the other circumstances, it afforded ample evidence to justify the jury in finding express malice on the part of the defendant, for he knew that the natural result of his communication to the association would be the blacklisting of the plaintiff.

The defendant's counsel claims that the defendant had no personal connection with the affair, and that what was done was done by

Haff, his agent; that, if malice was proven, it was a willful and ma-
licious tort on the part of Haff, for which the defendant is not liable.
It is difficult to see the ground for this suggestion.   The letters of
March 19th and July 28th, upon which the association acted, are
signed by the defendant personally, not by Haff.   It is true that Haff
said the letters "were sent out under my direction, and I had no di-
rections from any one superior or inferior to me.   It was done in
the regular routine of my business."   As he says that he was "prac-
tically the manager, under Mr. Blauvelt," of the defendant's business,
his acts bring the matter within the principle that a master is re-
sponsible for willful injury committed by his servant while engaged
in the transaction of the master's business.   Griswold v. Haven, 25
N. Y. 595, 600, 82 Am. Dec. 380, citing 3 Chit. Commer. Law, 209;
Rounds v. Railroad Co., 64 N. Y. 129, 21 Am. Rep. 597; Mott v.
Ice Co., 73 N. Y. 543.  In the last case it was said (page 547):

> "For the acts of the servant, within the general scope of his employment,
> while engaged in his master's business, and done with a view to the further-
> ance of that business and the master's interest, the master will be responsi-
> ble, whether the act be done negligently, wantonly, or even willfully.   In
> general terms, if the servant misconducts himself in the course of his employ-
> ment, his acts are the acts of the master, who must answer for them.   There
> are intimations in several cases of authority that for the willful acts of the
> servant the master is not responsible.   McManus v. Crickett, 1 East, 106;
> Hibbard v. Railroad Co., 15 N. Y. 455; Wright v. Wilcox, 19 Wend. 343, 32
> Am. Dec. 507.   But these intimations are subject to the material qualifica-
> tion that the acts designated 'willful' are not done in the course of the service,
> and were not such as the servant intended and believed to be for the interest
> of the master.   In such case the master would not be excused from liability
> by reason of the quality of the act."

The defendant's motion to direct a verdict in his favor was prop-
erly denied, as the question of defendant's malice, upon the testimony,
was properly a question for the jury.   Rounds v. Railroad Co., su-
pra.
   The court refused the request of the defendant to charge that
there was no proof of actual damage, and that the jury could not
render a verdict for anything more than nominal damages.   The re-
fusal was proper.   The evidence shows specific instances from which
the jury was justified in finding that the plaintiff lost business through
the acts of the defendant.
   The judgment and order should be affirmed, with costs.   All con-
cur.